## STATE OF CONNECTICUT *v.* SAMUEL DELGADO
## (2718)

DUPONT, C. J., BORDEN and DALY, Js.

Argued April 11—decision released July 29, 1986

*Francis T. Mandanici,* with whom, on the brief, was *Richard L. Goldblatt,* for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Patrick J. Clifford,* assistant state's attorney, and *Richard Palomba,* legal intern, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of the crime of manslaughter in the first degree, a violation of General Statutes §§ 53a-55 (a) (1) and (3). On appeal, the defendant claims that the trial court erred: (1) in giving unrecorded instructions, in a jury indoctrination session held the day before the defendant's trial began, to all jurors who had been summoned for jury duty; (2) in excluding evidence concerning protection sought by the defendant from the victim; (3) in excluding evidence about the defendant's previous approval of the victim's application for accelerated rehabilitation; (4) in restricting the cross-examination of the prosecution's key witness as to her knowledge of the victim's reputation for violence; (5) in allowing the introduction of a photograph of the victim dressed in a tuxedo; and (6) in admitting the testimony of a rebuttal witness who claimed that the victim told her three months prior to the stabbing that he was afraid of the defendant.

The jury reasonably could have found the following relevant facts based upon the evidence presented. At the time of the incident, the defendant was fifty-one years of age and the victim was nineteen. The two parties had a history of "bad blood" between them, which included the exchange of threats and acts of violence. The victim had previously been arrested for assaulting the defendant's daughter, the victim's former girlfriend.

Approximately one year after that assault, the defendant became engaged in an altercation with the victim at the entrance of a bowling alley. Blows were exchanged, and the defendant received five to six hits to his head which necessitated subsequent medical attention. During the course of the struggle, the defendant stabbed the victim in the chest with a knife, causing his death. The defendant claimed that he had acted in self-defense.

## I

The defendant's first claim of error is that the trial court's indoctrination of potential jurors prior to the commencement of the trial violated his constitutional rights to an impartial jury, to have counsel present at "important" proceedings, and to have a public trial. He also claims that the failure to record the indoctrination remarks interfered with his appellate rights. Such indoctrination of jurors is routinely given on the day that they report for jury duty, and consists of preliminary instructions which outline their primary duties and responsibilities. Neither the prosecution nor defense counsel is ordinarily present during such indoctrination procedure, and the proceedings are not usually recorded or transcribed.[1]

---

[1] Following the trial and conviction of the defendant, the trial judge who presided at the trial and at the indoctrination session provided a general outline of the comments made to the jurors during the indoctrination procedure in response to the defendant's motion to construct a transcript and record. The trial judge noted that the same format is given routinely whenever potential jurors are indoctrinated. In its memorandum, the trial court provided the following reconstruction of the comments made: "Following a preamble outlining the general nature of a jury trial and the relative functions of the court and jury the jury was specifically instructed that it must accept the law as given by the court.

"With respect to criminal cases the jury was told:

"(1) The fact the accused has been arrested, indicted or is the defendant in a criminal case does not carry any stigma of guilt.

"(2) An accused person is presumed to be innocent.

"(3) The state has the burden of proving guilt beyond a reasonable doubt.

The defendant failed to object to the indoctrination process at trial. Although the defendant concedes that this issue was not properly raised at trial, he argues that it is nonetheless reviewable because it involves fundamental constitutional rights. See *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

A three-pronged analysis must be undertaken in an *Evans* review. *State* v. *Cosby,* 6 Conn. App. 164, 167, 504 A.2d 1071 (1986). That analysis necessarily includes consideration of "(1) whether the record supports the defendant's claim that the trial court's action raises a question of fundamental constitutional dimension; (2) if so, whether the trial court's action was erroneous; and (3) if there was error, whether it requires reversal." Id.; see also *State* v. *Grant,* 6 Conn. App. 24, 27, 502 A.2d 945 (1986). If the first test is not met, the issue is not reviewable under *Evans* and it is not necessary to reach the analysis required by the other two tests. Our first inquiry, therefore, centers upon a determination of whether the record in this case supports the defendant's claim that the indoctrination of the jury raises an issue of constitutional dimensions.

It is undisputed that the rights enumerated by the defendant concerning the right to an impartial jury, the right to have counsel present at critical stages in the criminal proceedings against him, and the right to an open court and public trial are all fundamental constitutional rights guaranteed by the federal and state constitutions. Merely because the defendant asserts

"(4) The accused person is not required to prove his innocence; he is not obliged to testify in his own behalf and if he exercises his privilege in this respect the jury may draw no adverse inference therefrom.

"(5) The credibility of witnesses presents an issue for decision by the jury. The testimony of a police officer is not cloaked with any special sanctity and is to be subjected to the same tests as the testimony of other witnesses.

"The jury was also instructed that the remarks of the court were not intended to be a full and complete statement of all applicable rules of law but simply comments which hopefully would assist it in understanding its most important task."

these constitutional rights, however, does not necessarily mean that such constitutional rights are in fact involved in a particular case. It is not unknown for a defendant on appeal to "put a constitutional tag on a nonconstitutional claim." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). Appellate counsel has sufficiently reconstructed the record for purposes of review under the first test of *Evans.* A review of that record indicates that the trial judge made general comments regarding the general duty and obligations of the jurors, as well as general remarks regarding the burden of proof.[2] There is not even a hint of prejudice to this particular defendant demonstrated in the court's reconstruction of its remarks.

Although the record is sufficient for review, the second half of the first part of the *Evans* test has not been met. No fundamental constitutional right is involved. The defendant claims that the jury indoctrination deprived him of an impartial jury panel because the court's statements were improper ex parte communications between the judge and members of the jury panel. He relies on *State* v. *Altrui,* 188 Conn. 161, 182, 448 A.2d 837 (1982). That case, however, provides him no support. There, during the trial, the court met privately with one juror. Here, the court spoke to *all*

---

[2] The record also reflects that references were made to what was discussed at the jury indoctrination in open court, after the jury had been selected and sworn. The following soliloquy was presented by the trial court: "As I indicated to you at the outset the other day when I was conducting the indoctrination upstairs, the law does not require an accused to prove his innocence. . . . In this case, as in all jury cases, as I told you yesterday upstairs and indicated in my preliminary comments concerning this matter at the outset, that you as the Jury and myself as the Court have rather separate and distinct, but equally important parts and functions. . . . Also, it's most important that you keep an open mind. As I said to you yesterday I believe, that is, those that were in the group I spoke to, don't be the kind of a person who hears what one witness has to say and then immediately jumps to a conclusion that you know all that there is to know about the case."

prospective jurors before any one of them had been assigned to any particular case. At this stage, the trial judge had no realistic way of knowing which jurors would be selected for the defendant's trial. Moreover, because such indoctrination occurs before the trial begins, the potential for prejudice is greatly diminished in light of the instructions given to the jury by the trial judge in open court subsequent to the indoctrination. The possibility of the survival of any prejudicial remark is slight. See *Jones* v. *State,* 482 N.E.2d 243, 245 (Ind. 1985).

A review of other jurisdictions which have considered this issue supports this conclusion. The prevailing rule of law that has emerged regarding jury indoctrination is that such unrecorded remarks made to potential jurors at an indoctrination proceeding in which neither the defendant nor defense counsel are present is not prejudicial or a deprivation of a defendant's constitutional right to an impartial jury. See, e.g., *People* v. *Izzo,* 14 Ill. 2d. 203, 151 N.E.2d 329 (1958); *Jones* v. *State,* supra; *Brown* v. *State,* 29 Md. App. 1, 349 A.2d 359 (1975); *State* v. *Stroud,* 683 P.2d 459 (Mont. 1984); *State* v. *Vance,* 162 W. Va. 467, 250 S.E.2d 146 (1978). The rationale behind this principle is that "[n]o litigant has a right, constitutional or otherwise, to have his case tried before ignorant jurors. To acquaint the juror with his duties and responsibilities in a new environment and to increase his understanding of the processes of a trial can hardly be objectionable in itself." *People* v. *Izzo,* supra, 334.[3]

---

[3] It has been noted that such jury indoctrination procedures are customarily used to acquaint jurors with their prospective duties and responsibilities in several states. See annot., 89 A.L.R.2d 197 (1963). "All authorities and commentators are thus in agreement that there is a need for and it is proper to initiate the jury panel at the beginning of the term by informing them of their duties and responsibilities." *State* v. *Vance,* 162 W. Va. 467, 475, 250 S.E.2d 146 (1978).

In light of these principles, the defendant's claim that his fundamental constitutional right to an impartial jury is involved is not supported and an *Evans* review is not required.

The defendant also asserts that the jury indoctrination procedure is reviewable under *Evans* because it involves a deprivation of his constitutional right to be present with the assistance of counsel at an important stage of his trial. The record reveals that the defendant was not present at the indoctrination. The constitutional right to be present in court with the assistance of counsel under the sixth amendment applies only to certain crucial proceedings. See *State* v. *Falcon,* 196 Conn. 557, 561, 494 A.2d 1190 (1985). There is no violation of the sixth amendment, however, when the accused and counsel are not present at noncritical stages "since there is minimal risk that . . . absence at such stages might derogate from [a defendant's] right to a fair trial." *United States* v. *Wade,* 388 U.S. 218, 228, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The jury indoctrination proceeding does not constitute a critical stage of the criminal process against a defendant, nor has his trial even begun.[4] See, e.g., *Brown* v. *State,* supra, 363; *State* v. *Vance,* supra, 151.

Equally without merit is the defendant's claim that he has been denied a constitutional right to an open and public trial through the use of the indoctrination procedure. Contrary to the assertions of the defendant, the trial that the defendant received was both open and public, which is all that the constitution requires. A defendant has no constitutional right to an open and public jury indoctrination, a noncritical stage of the

---

[4] There may be cases where the reconstructed record of the jury indoctrination may indicate such a grossly erroneous statement of the law that a defendant might have been denied a fair trial even though the indoctrination is not a critical stage in the criminal proceedings or part of a trial against a particular defendant. This is not such a case.

defendant's trial. We are precluded, therefore, from reviewing this claim of constitutional deprivation under the first test of *Evans*.

Neither will we review the defendant's claim that the unrecorded jury indoctrination proceeding deprived him of a full record and transcript in order to pursue his appeal. There is no constitutional right to appeal; rather, a right to appeal exists only if one has been created by statute. *Gaines* v. *Manson,* 194 Conn. 510, 515, 481 A.2d 1084 (1984).

Without issues of constitutional dimensions required by the *Evans* bypass, we will not consider the defendant's first claim of error.

## II

The defendant's next claim of error was properly presented at trial and involves the trial court's exclusion of certain evidence proffered as part of the defendant's claim of self-defense. In order to establish his state of mind, and whether he was the aggressor, the defendant sought to introduce evidence regarding his alleged fear of the victim. In his offer of proof, the defendant asserted that three weeks prior to the stabbing incident, he had sent his wife to the state's attorney's office to seek protection for his family from the victim. The wife informed an assistant state's attorney that the family was in fear, and requested assistance in keeping the victim away from her family. The wife also inquired about the possibility of getting the state's attorney's office to recommend some sort of psychological evaluation of the victim. During the course of this meeting, the defendant's wife expressed concern over what the defendant would do regarding the situation. The assistant state's attorney informed the defendant's wife at that time that there was nothing that the state's attorney's office could do in the way of affording the family protection. Counsel for the

defendant sought to introduce this evidence through the testimony of the defendant, the defendant's wife, and the assistant state's attorney. All such testimony regarding this evidence was excluded by the court as being collateral and confusing to the jury.

The defendant claims that such evidence was relevant to his state of mind, and was necessary to present to the jury his reason for carrying a knife on the particular night of the stabbing incident. The defendant argued strenuously to the trial court that the defendant's self-defense theory was premised on the fact that following the meeting between the defendant's wife and the state's attorney's office, the defendant believed that the law could not afford him any protection prior to any affirmative adverse action on the part of the victim. The defendant thus claimed that he felt compelled to seek other means to protect himself and his family from the victim.

This court has previously recognized that "[n]o precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to reason and judicial experience." *State* v. *Aspinall,* 6 Conn. App. 546, 554, 506 A.2d 1063 (1986). In each case, we recognize that it is the trial court which is in the best position to view the evidence in the context of the case as a whole, and its rulings on the admissibility of evidence are given great deference. "On appeal, we are limited in our review to a determination of whether, under the circumstances of the case, in exercising its broad discretion, the trial court could legally act as it did, and not whether we, under the same circumstances, would make the same ruling." Id. We disagree, however, under the facts of this case, with the trial court's evidentiary ruling on this issue.

The evidence was crucial to the defendant's claim of self-defense and the court should not have excluded it

in its entirety. It was not irrelevant or collateral to the defendant's case.

The state argues that such testimony amounted to hearsay, and was thus not admissible. It is an elementary premise of evidentiary law, however, that testimony is considered to be hearsay only when it is an out-of-court statement "offered to establish the truth of the matters contained therein." *State* v. *Sharpe,* 195 Conn. 651, 661, 491 A.2d 345 (1985). If such testimony is offered, instead, as it was here, to show the defendant's reasonable apprehension of danger or state of mind, it is not offered for its truth. See McCormick, Evidence (3d Ed. 1984) § 249, p. 734. Since the proffered testimony of the defendant, the defendant's wife, or the state prosecutor sought to be introduced on this issue was not hearsay, and was not irrelevant or collateral to an issue in the case, it should have been admitted. See *State* v. *Silveira,* 198 Conn. 454, 503 A.2d 599 (1986).

Our determination that the trial court erred in the exclusion of such testimony does not necessarily require reversal unless such exclusion "was so prejudicial to the rights of the defendant as to deprive him of a fair trial. . . . " *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The crucial and controlling inquiry in such a determination is "whether the claimed erroneous action of the court would have been likely to affect the result." *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976).

Our review of the record indicates that the exclusion of such evidence was likely to affect the result. It is a fundamental facet of due process that a defendant charged with a crime be afforded the right to establish and present a defense. *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). The defendant's state of mind when he stabbed the victim was crucial to the

finding of intent required to prove the commission of the crime of which he was found guilty. His state of mind was also essential to his claim of justification. Under General Statutes § 53a-19, a defendant may be found to be justified in using deadly physical force in order to defend himself or others when there is a reasonable belief that such force was necessary. The test for the degree of force in self-defense is subjective-objective. "The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984). The testimony excluded by the trial court was necessary to establish the reasonableness of the defendant's belief to the jury.

In the present case, the defendant was entitled to present his version of the events, and to present such evidence to support his version in as full a manner as possible to the jury. The nature and extent of the evidence that was excluded was of a distinct and different order than other testimony which was admitted and which may have reflected on the aggressive nature of the victim. All other evidence presented regarding the victim's aggressive behavior concerned incidents occurring in the remote past. The excluded testimony concerned events which took place three weeks before the commission of the crime.

The defendant's entire defense was premised on the assertion that he was desperately afraid of the victim and had taken positive steps to seek protection for himself and his family. Most importantly, the defendant was told that the state's attorney's office had informed his wife that the state could offer no such protection. The defendant had a right to inform the jury why he felt a need to carry a knife. Although a new trial must be ordered because of the exclusion of this evidence,

the remaining claims of error presented by the defendant are considered since they are likely to recur on retrial.

## III

The defendant's third claim of error also involves the trial court's ruling on evidence relating to the defendant's state of mind. The defendant sought to introduce the victim's application for accelerated rehabilitation regarding the victim's arrest for the assault of the defendant's daughter, which was agreed to by the defendant a year prior to the stabbing incident.[5] The defendant alleges that this evidence was relevant to the defendant's state of mind by illustrating that he displayed a forgiving attitude towards the victim, and did not bear a grudge towards the victim because of this assault. The trial court excluded the evidence, ruling that it was collateral and irrelevant.

The admissibility of this evidence raises a close question. A review of the record indicates that although this evidence was excluded on direct examination of the defendant, the state was permitted to conduct a cross-examination of the defendant which included questions regarding whether or not he had harbored angry feelings stemming from the assault of his daughter.[6] He denied that he did. The exclusion of evidence tending

---

[5] General Statutes § 54-56e requires that notice be given to the victim and that the victim have an opportunity to be heard on defendant's motion.

[6] The state was permitted to conduct the following cross-examination of the defendant:

'Q. Is it fair to say, Mr. Delgado, that based on the incident between Michael and your daughter, and the other run-ins you had with Michael, that you were angry at him?

"A. No, sir.

"Q. You were not mad.

"A. No, sir.

"Q. You did not wish to take the law into your own hands concerning Michael Keating?"

"A. No, sir."

to show the defendant's state of mind a year prior to the alleged crime was within the broad discretion of the trial court, particularly where other evidence was introduced to show that state of mind. The court did not abuse its discretion in excluding it.

## IV

The defendant's next assignment of error involves the trial court's restriction of the cross-examination of the prosecution's key witness regarding her knowledge of the victim's reputation as a fighter. The defendant claims that the court's ruling violated his constitutional right of confrontation. During the cross-examination of the victim's girlfriend at the time of the stabbing incident, the defense counsel asked her whether she knew anything about such reputation. The trial court sustained the state's objection to this question on the ground that the defendant had not yet asserted a self-defense claim. In its ruling, the trial court noted that up to that point in the trial, the defendant had asserted that he did not commit the act. The court expressed its concern over admitting such evidence if a self-defense claim would not, in fact, be asserted. The court expressly stated, however, that when such evidence of a factual situation supportive of self-defense was presented, the defendant would be given an opportunity to bring forth evidence relating to the violent traits of the victim.[7] Although the trial court recognized that

_____

[7] The trial court's ruling on the exclusion of such evidence included the following: "I think I ought to indicate for the record, so as to afford Mr. Goldblatt an opportunity to have a record in the event of an appeal. That I am going to exclude at this stage of the proceedings, any evidence relating to any trait of character. For instance, for violence, if that's what is sought to develop. And the reason for that is this. And I don't think it necessary to develop this concept anymore than has already been developed. The position of the accused in the case from the very outset has been, and even up through and including the time that this trial started, that he did not do this. And as it was pointed out with that contention having been asserted that would be no basis for the defense of justification, or self-defense. And

its restriction would result in probable procedural confusion, it nonetheless sustained the state's objection as the more prudent course to follow.

A defendant may introduce evidence of the violent character of the victim when a sufficient foundation for self-defense has been asserted. *State* v. *Miranda*, 176 Conn. 107, 405 A.2d 622 (1978). The defendant does not claim that he was prevented from introducing such evidence altogether, but, asserts instead, that he was prevented from doing so during the cross-examination of the state's witness.

The function of cross-examination is to test the credibility of the witness. *State* v. *Denby*, 198 Conn. 23, 31–32, 501 A.2d 1206 (1985). Thus, the question in determining the relevancy on cross-examination is not "whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness. . . ." Id. Although testimony relative to the defendant's defense of justification, which he indicated would be made, is a main issue, it was not relevant to the credibility of the witness.[8]

The relevance of cross-examination is within the trial court's discretion. *State* v. *Vitale*, supra, 402. Cross-

I feel therefore that the safer and more prudent course to follow is to eliminate any evidence at this time with respect to the character trait of the decease[d] which might otherwise be involved in the self-defense case. Until such time as there has been evidence of a factual situation supportive of self-defense. And if indeed that develops, then of course I will award Mr. Goldblatt an opportunity to approach the matter in terms of traits of character as provided for in the evidentiary rules relating to this case. Now, I understand that this creates a modest problem in terms of procedure. On the other hand I just feel that this is the safer course to pursue. So, the objection which was interposed to the question directed to Miss Condon is sustained. And you may have an exception."

[8] Prior to the court's ruling on the state's objection and out of the presence of the jury, the defendant specifically alerted the court to the fact that a defense of self-defense would be used.

examination is sufficient to satisfy the sixth amendment "when defense counsel is permitted to expose to the jury the facts from which the jurors, as the sole triers of the facts and credibility, can appropriately draw inferences relating to the reliability of the witness." Id., 402. As long as the trial court has allowed sufficient cross-examination to satisfy the sixth amendment requirements, this court will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.

The trial court's restriction of the cross-examination of the state's key witness in this case was not constitutionally defective. The defendant was not attempting with this evidence to discredit the reliability of the witness, but rather, to introduce evidence relating to a self-defense claim.

The record reflects that, contrary to the defendant's assertions, the testimony of the state's witness did not portray an image of the victim as the nonaggressor. In fact, her testimony indicated that not only was there mutual "bad blood" between the parties, but that the victim carried knives in his car. Moreover, the witness testified that she saw the victim punching the defendant. She also stated that she knew that the victim would fight the defendant. Because her testimony indicated that the victim had an aggressive character, the defendant's cross-examination of the witness as to whether the witness was aware of the victim's reputation as a fighter was irrelevant as to the motive, bias, or interest of the witness. There was no deprivation of the constitutional right of the defendant to cross-examine a witness.

Evidence of the reputation of the victim as a fighter was elicited during the subsequent testimony of the defendant, the defendant's wife, and the defendant's

daughter. Most importantly, the defendant was able to recall the state's witness in order to establish such reputation after his self-defense claim had been raised by the introduction of his own evidence, but failed to do so. There was, therefore, no error in the trial court's limitation of the cross-examination of the state's witness.

## V

The defendant next claims that the trial court erred in admitting a photograph of the victim into evidence over his objection. The photograph depicted the victim in a tuxedo, and was introduced by the prosecution for the purpose of identification. The defendant offered to stipulate to the identification of the deceased as the victim, and contends that such photograph was thus devoid of any probative value, and its admission could only arouse the sympathy of the jurors.

The general rule adhered to regarding the admissibility of photographs is that they " ' "are admissible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. Note, 73 A.L.R.2d 769, 787. A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible prejudicial effect. *Thibodeau* v. *Connecticut Co.*, 139 Conn. 9, 14, 89 A.2d 223 (1952) . . . ." ' " *State* v. *DeJesus*, supra, 381. Moreover, potentially inflammatory photographs need not be absolutely essential to the prosecution's case in order to be admissible, but must merely be found to be relevant. *State* v. *Piskorski*, 177 Conn. 677, 701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Thus, as long as the photograph is shown to be relevant to the prosecution's case, the trial court can exercise its

discretion in admitting such evidence, as long as its probative value outweighs any prejudicial effect. *State* v. *DeJesus,* supra, 381–82. As in all such evidentiary rulings, the trial court exercises broad discretion in admitting such photographs into evidence, and its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown. *State* v. *Piskorski,* supra, 700–701.

We have examined both the photograph and the record and find no abuse of discretion in this case. The exhibit in question was a three and one-half inch by five inch color photograph depicting the victim only from the chest up, dressed in a tuxedo.

The state was entitled to introduce all legally competent evidence which could aid the jury in determining relevant issues. The photograph was clearly relevant and probative on the issue of the identification of the victim. Although the defendant conceded to the identification of the victim as the deceased, the photograph was nonetheless admitted so that other witnesses to the incident who were not familiar with the victim could identify the victim and then adequately testify to his actions on the night of the stabbing incident. The picture was not inflammatory, not prejudicial and was relevant. The trial court did not abuse its discretion in admitting it into evidence.

## VI

The defendant's final assignment of error concerns the trial court's admission into evidence of the testimony of the state's rebuttal witness who claimed that the victim told her three months prior to the stabbing that he was afraid of the defendant and was in fear for his life. The defendant acknowledges in his brief that such statements are admissible under the state of mind exception to the hearsay rule. The defendant, however, asserts that under the circumstances presented in this

case, the trial court abused its discretion in admitting such evidence because of the prejudice resulting to the defendant from the trial court's prior exclusion of the application for accelerated rehabilitation and the testimony regarding the meeting between the defendant's wife and the state's attorney's office in which the fears of the defendant's family were discussed. Our conclusion that the exclusion of the latter evidence of the defendant was error and that such evidence should have been admitted effectively disposes of the defendant's final claim. On retrial, both the defendant's evidence as to that meeting and the evidence of the state's rebuttal witness should be admitted.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.