# STATE OF CONNECTICUT *v.* PATRICK COLLINS
## (AC 21589)

Lavery, C. J., and Landau and Dranginis, Js.

Argued November 29, 2001—officially released April 2, 2002

*John R. Williams*, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John*

*A. Connelly*, state's attorney, and *Maureen M. Keegan*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Patrick Collins, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims that the trial court improperly (1) failed to admit eyewitness testimony of specific acts of abuse perpetrated on the defendant by the victim, and (2) admitted evidence of prior bad acts and bad character of the defendant. We reverse the judgment of the trial court.

The following facts are not in dispute. On January 17, 1998, the defendant, who was sixteen years old at the time, stabbed the victim, his stepfather, to death. The victim had lived with the defendant and the defendant's mother since the defendant was eight. The defendant and the victim did not get along. On the night of the incident, sometime after 11 p.m., the defendant and the victim engaged in an argument about a stereo that the defendant had purchased with his mother's credit card. The two began a fistfight. The defendant stabbed the victim with a pocketknife and a kitchen knife, and ran out the door. He immediately called his uncle from a pay telephone, who told him to call 911. The defendant called the police and informed them that there had been a fight. He stated that he did not know if he had stabbed his victim or what his condition was. When the police arrived, he stated, "I took a swipe at him with my pocketknife."

The victim's body was found on the living room couch.[1] An autopsy performed on the victim revealed

---

[1] Police officers performed cardiopulmonary resuscitation until the victim was transported to a hospital where he was pronounced dead.

that he suffered four sharp force injuries, including three to the left chest and one to the right abdomen. A wound to the victim's chest measuring eight and one-half inches deep caused death. A bloodied, eight inch long kitchen knife was found on the kitchen floor. A pocketknife later was found in the pocket of a coat in the defendant's bedroom by his mother.

The jury found the defendant guilty. He was sentenced to a forty year term of imprisonment. This appeal followed. Additional facts will be set forth as necessary to resolve the issues on appeal.

## I

## BAD ACTS OF THE VICTIM

The defendant first claims that the court improperly precluded him from offering evidence of specific acts of violence by the victim perpetrated on the defendant, thereby depriving him of his constitutional right to present a defense. He claims that the acts of violence were highly relevant to his claim of self-defense because they tended to show his state of mind at the time of the killing. Specifically, he argues that the court improperly limited the cross-examination of James D'Virgilio, Jr., the son of the victim; the direct examination of Jeremy Smith, a friend of the defendant; Darilee Beliveau, the defendant's girlfriend; and Bobby Collins, the defendant's uncle, regarding whether they ever had witnessed specific acts of abuse perpetrated on the defendant by the victim.[2]

---

[2] The defendant also notes that he improperly was prohibited from using a photograph of his facial injuries to cross-examine a police officer. The defendant failed, however, to provide any analysis to support his claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 67 Conn. App. 25, 27 n.2, 787 A.2d 43 (2001).

"The constitutional right to present a defense does not include the right to introduce any and all evidence claimed to support it. . . . The trial court retains the power to rule on the admissibility of evidence pursuant to traditional evidentiary standards. . . . The defendant has no right to present evidence that is not admissible according to the rules of evidence . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Bridges*, 65 Conn. App. 517, 524, 782 A.2d 1256, cert. denied, 258 Conn. 934, 785 A.2d 230 (2001).

"Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 173, 777 A.2d 604 (2001).

"Furthermore, evidentiary rulings will be overturned on appeal only upon a showing by the defendant of substantial prejudice or injustice. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Pappas*, 256 Conn. 854, 892, 776 A.2d 1091 (2001).

In this case, the defendant argues that evidence of specific prior acts of violence by the victim perpetrated on the defendant was probative of his state of mind and, therefore, relevant to his claim of self-defense. The state, in response, argues that the evidence properly was excluded as specific acts of violence offered to

show the victim's character for violence. We agree with the defendant.

"As a matter of hornbook law, evidence of other crimes or bad acts is normally treated as inadmissible character evidence. See, e.g., 1 C. McCormick, Evidence (4th Ed. 1992) § 190." *State* v. *Mozell*, 36 Conn. App. 672, 675, 652 A.2d 1060 (1995). "[E]vidence of character in any form—reputation, opinion from observation, or specific acts—generally will not be received to prove that a person engaged in certain conduct or did so with a particular intent on a specific occasion, so-called circumstantial use of character. The reason is the familiar one of prejudice outweighing probative value. Character evidence used for this purpose, while typically being of relatively slight value, usually is laden with the dangerous baggage of prejudice, distraction, time consumption and surprise." 1 C. McCormick, supra, § 188, p. 793.

The general exception to the rule with respect to the admissibility of character evidence in the context of self-defense claims is well settled. "When a defendant charged with murder asserts that he killed in self-defense, his state of mind—the existence and reasonableness of apprehension of such violence by the deceased as to justify the defensive measures adopted—becomes material. . . . In such a case, the defendant may introduce evidence of the victim's violent character to attempt to show that the victim was the aggressor. . . . Similarly, a defendant may, if he first shows that he was aware of the victim's violent nature, *introduce such [character] evidence to show his own state of mind at the time he confronted the victim, and thereby show the reasonableness of his belief that the use of force was necessary. . . .* A victim's violent character may be proven by reputation or opinion evidence or by evidence showing convictions for crimes of violence. . . . It may not, however, be

proven by evidence of other specific acts. . . . Except where character is directly in issue, a person's violent character may not be established by evidence of specific acts. . . . A decedent's violent character may not be established by evidence of specific violent acts, other than convictions, not because it is unconvincing but because it has the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Carter*, 48 Conn. App. 755, 763, 713 A.2d 255, cert. denied, 247 Conn. 901, 719 A.2d 905 (1998).

Equally important is the rule that "[e]vidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." (Internal quotation marks omitted.) *State* v. *Cansler*, 54 Conn. App. 819, 832, 738 A.2d 1095 (1999).

"Evidence is not rendered inadmissible because it is not conclusive. All that is required is that evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.1.1, p. 226." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 196, 700 A.2d 38 (1997).

We have articulated the requirements of self-defense as follows. "A person may justifiably use deadly physical force in self-defense pursuant to [General Statutes] § 53a-19 (a) only if he reasonably believes both that (1)

his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such attack. . . . We repeatedly have indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. . . .

"The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant *in fact had believed that he had needed to use deadly physical force*, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . The jury's initial determination, therefore, requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief in the necessity to use deadly force at the time of the confrontation is in fact credible. This probe into the defendant's actual state of mind clearly demonstrates the function of the jury in [its] evaluation of the self-defense claim. . . .

"If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether *that belief was reasonable, from the perspective of a reasonable person in the defendant's circumstances*. . . . Thus, if a jury determines that the defendant's honest belief that he had needed to use

deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19a." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Scarpiello*, 40 Conn. App. 189, 206–207, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996).

We conclude that the evidence of prior acts was not proffered for the purpose of establishing the decedent's violent character. Rather, the evidence was proffered to show the state of mind of the defendant directly because the victim's abuse of the defendant tends to show that the defendant in fact feared the victim and was reasonable in doing so.

At trial, the defendant claimed that he had stabbed the victim in self-defense. He testified that on the night of the incident, he had returned home with a new stereo and entered the home through the front door instead of the back door. The victim became angry and demanded to see the receipt for the stereo. The defendant went into his bedroom and began searching for the receipt. Meanwhile, he spoke with his girlfriend on the telephone. The victim came into the defendant's room and ordered him off the telephone. The defendant further testified that the victim hit him in the back of his head with his fist. The defendant then hung up the phone, but the punching continued. At one point, the victim had the defendant in a headlock and repeatedly punched him in the head. The defendant testified that he managed to pull out a pocketknife, open it partially and strike the victim with it. The defendant's girlfriend telephoned again. The victim answered and hung up. In the kitchen, the two continued fighting and yelling at each other. The defendant testified that the victim was relentless in coming at him and that he was fearful that the victim would not stop beating him. The defendant finally picked up a kitchen knife and stabbed the victim.

In this case, the defendant's state of mind at the time of the killing is a fact in issue. Evidence of prior bad acts by the victim perpetrated on the defendant may be admissible to show the defendant's state of mind. See *State* v. *Guess*, 44 Conn. App. 790, 810, 692 A.2d 849 (1997) (victim's threat to defendant relevant to show animosity between victim, defendant and reasonable to infer defendant might have wanted to take revenge), aff'd, 244 Conn. 761, 715 A.2d 643 (1998); *State* v. *Delgado*, 8 Conn. App. 273, 280–82, 513 A.2d 701 (1986) (improperly excluded testimony of defendant's wife relevant to defendant's state of mind, self-defense claim in that it showed he had reasonable apprehension of danger from victim); cf. *State* v. *Vega*, 48 Conn. App. 178, 191, 709 A.2d 28 (1998) (testimony that defendant previously abused victim relevant to show defendant's state of mind relative to defense of extreme emotional disturbance). Because the defendant claimed that he acted in self-defense, the jury had to determine (1) whether he in fact believed that deadly force was necessary and (2) whether his belief "was reasonable, from the perspective of a reasonable person *in the defendant's circumstances.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Scarpiello*, supra, 40 Conn. App. 207.

The state's reliance on *State* v. *Carter*, supra, 48 Conn. App. 763, is misplaced. In *Carter*, the trial court refused to allow the defendant, who had claimed self-defense, to testify that he *witnessed* or *heard of* specific prior acts of the victim that rendered him in fear of his victim. Id., 762. This court affirmed the trial court's judgment of conviction. As in this case, the trial court permitted the defendant in *Carter* to testify about specific acts of violence committed against him by the victim. Id., 764. *Carter* is distinguishable, however, because in that case, the defendant and other witnesses were precluded from testifying about violent acts that the victim had

perpetrated on *third parties* that put the defendant in fear of his victim. Here, the defendant was precluded from introducing testimony of specific acts of violence that had been perpetrated on him by the victim. Id. We find the facts of *Delgado* and *Guess* to be more in line with the facts of this case.

As in the present case, the defendant in *Delgado* admittedly killed his victim, but claimed self-defense. In both cases, the evidence showed "bad blood" between the defendant and the victim. In *Delgado*, the victim had assaulted his former girlfriend, the defendant's daughter. Approximately one year later, the defendant and the victim got into an argument in which, ultimately, the defendant stabbed and killed the victim. At trial, the defendant sought to admit evidence of his state of mind through his wife's testimony. Specifically, she would have testified that three weeks prior to the killing, the defendant had sent her to the state's attorney's office seeking protection from the victim. She stated that the family was in fear and that she did not know what the defendant would do if the police could not protect them. The court, however, excluded the proffered evidence as collateral and confusing to the jury. On appeal, this court determined that the proffered evidence improperly had been excluded and that it was "crucial to the defendant's claim of self-defense." *State v. Delgado*, supra, 8 Conn. App. 281.

In *Guess*, under the state of mind exception to the hearsay rule, the state offered evidence of a specific prior act of the victim, namely, that the victim had threatened the defendant. The state argued, and this court agreed, that it was reasonable to infer from the threat that there was animosity between the victim and the defendant, and that the defendant had wanted to take revenge on the victim. The court distinguished the facts of *Guess* from the situation in which the state seeks to submit evidence of a victim's fear to show

animosity between a victim and a defendant. The court noted that "[h]atred begets more anger and perhaps revenge, while fear is far less likely to produce a heated response." *State* v. *Guess,* supra, 44 Conn. App. 810. In cases of self-defense in which the defendant claims that he or she had a reason to fear his or her victim, we conclude that specific acts of violence brought upon an individual are likely to invoke fear of the victim in the mind of that individual.

We hold that in the case of self-defense, eyewitness testimony of prior specific acts of violence perpetrated on a defendant by his or her victim is admissible to show the state of mind of the defendant at the time of the killing.

The improper exclusion of certain evidence may amount to a deprivation of a defendant's right to present a defense. *State* v. *Cavell,* 235 Conn. 711, 720, 670 A.2d 261 (1996). "It is a fundamental facet of due process that a defendant charged with a crime be afforded the right to establish and present a defense." *State* v. *Delgado,* supra, 8 Conn. App. 282. "The state bears the burden of demonstrating that the constitutional error was harmless beyond a reasonable doubt. . . . That determination must be made in light of the entire record. . . . Stated another way, the question is whether it is reasonably possible that the court's refusal affected the verdict." (Internal quotation marks omitted.) *State* v. *Jones,* 65 Conn. App. 649, 654, 783 A.2d 511 (2001).

Here, the defendant was precluded from offering evidence that went to a crucial element of his defense—his state of mind. The defendant testified about abuse by the victim, and others testified about the victim's violent character. The defendant was precluded, however, from offering evidence that substantiated his claim that he in fact feared the victim and that his fear

was reasonable under the circumstances. Testimony of independent observers would have bolstered the defendant's credibility. Without their testimony, it was more likely that the jury would think that the defendant was fabricating the severity of the abuse and the extent of his fearfulness because of his interest in the outcome of the case. The jury needs all relevant and material information to assess the subjective fear of the defendant. "The jury's assessments of the defendant's credibility, and that of the witnesses in his defense, were crucial to its ultimate determinations of the defendant's guilt or innocence." *State* v. *Boscarino*, 204 Conn. 714, 736, 529 A.2d 1260 (1987). Had the evidence been admitted, the jury might reasonably have been persuaded that the defendant, who was smaller and younger than the victim, reasonably had concluded that under the circumstances he was justified in using deadly force. In fact, we cannot conceive of more probative evidence of the reasonableness of the defendant's belief that he was in imminent peril at the time of the killing than evidence that the victim, over a course of eight years, physically had abused the defendant. The evidence was crucial to the defendant's claim of self-defense, and the court should not have excluded it in its entirety. We conclude, therefore, that it is reasonably possible that the exclusion of the evidence affected the jury's verdict.

## II

## THE VICTIM'S STATE OF MIND

The defendant next claims that he improperly was restricted from questioning Joanne D'Virgilio, the victim's wife and the defendant's mother, regarding whether the victim had made any statements shortly before his death that might have indicated that the victim had a violent state of mind at the time of the incident.[3]

---

[3] Although our conclusion on the first issue is dispositive of this appeal, we address the defendant's other claims because the issues are likely to

The following additional facts are relevant to the defendant's claim. On direct examination, the defendant asked D'Virgilio about her interaction with the victim on the night of the incident. She testified that upon returning from work at about 11:40 p.m. that night, she "told him not—don't start anything. Don't start because I was not in the mood to get into an argument at that point." The defendant wanted to elicit further testimony that the victim had answered, "Oh, I will start something, all right." The defendant argued that the statement went to the state of the mind of the victim, which was relevant, therefore, to a determination of whether he was the aggressor. The state argued, and the court agreed, that the statement was hearsay.

"[A]n out-of-court statement that is offered to establish the truth of the matter asserted is inadmissible hearsay unless the statement falls within a recognized exception to the hearsay rule. . . . An out-of-court statement is not hearsay, however, if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted. . . . Of course, for any such out-of-court statement to be admissible, it must be relevant to an issue in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 137–38, 763 A.2d 1 (2000). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . It is well settled that questions of relevance are committed to the sound discretion of the trial court. . . . *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 184, 782 A.2d 231 (2001); see also 1 B.

arise on retrial. See *State* v. *Lattore*, 51 Conn. App. 541, 549, 723 A.2d 541 (1999).

Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 67b." (Internal quotation marks omitted.) *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 227–28, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002). Our review of the record reveals that the victim's statement was made to his wife about getting into an argument with *her*. We therefore cannot conclude that the court abused its discretion in excluding the statement, which was not relevant to whether he was the initial aggressor against the defendant.

### III

### BAD ACTS AND CHARACTER OF THE DEFENDANT

The defendant next claims that the court improperly admitted irrelevant and prejudicial evidence of the defendant's prior bad acts and bad character. Specifically, he argues that the state improperly was allowed to elicit testimony that the defendant (1) habitually abused marijuana, (2) was disruptive and performed poorly in school, (3) was abusive to his younger brothers, (4) put his materialistic desires before the needs of the family and (5) had disciplinary problems while he was in jail.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Exceptions to the general rule exist, however, if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . The primary responsi-

bility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Abrahante*, 56 Conn. App. 65, 75–76, 741 A.2d 976 (1999).

With respect to the defendant's claim that the court improperly admitted evidence of his marijuana use, we conclude that the defendant opened the door to the challenged testimony. "[I]f a party delves into a particular subject during examination, he is said to have 'opened the door' for further examination regarding that subject." *State* v. *Morascini*, 62 Conn. App. 758, 766, 772 A.2d 703, cert. denied, 256 Conn. 921, 774 A.2d 141 (2001). On direct examination, the defendant testified that he had smoked marijuana with Smith and others at around 6 p.m. on the day of the incident. On cross-examination, the state asked the defendant whether he smoked marijuana every day. The defendant objected on the ground that what happened before the day of the killing was not relevant. After hearing counsels' arguments outside the presence of the jury, the court permitted the state to ask the defendant whether he had used marijuana before that day and whether he smoked every day. After reviewing the record, we cannot conclude that the court abused its discretion.

The court also allowed the state to question Smith as to whether he smoked marijuana on a regular basis. On direct examination, Smith had testified that on January 17, 1998, he and the defendant had smoked marijuana at around 6 p.m. He further testified that while accompanied by his parents, he had told police that he was with the defendant on that evening. On cross-examination, the state properly impeached the witness by asking whether he told the police that he had smoked marijuana that night and had smoked marijuana with

the defendant almost every day in high school. The door had been opened by the defendant, and the questions fairly went to the credibility of the witness.

The defendant next claims that the court improperly admitted evidence that he performed poorly in school and got into fights. We do not agree. Apparently as part of the defendant's trial tactics, he was asked, again on direct-examination, how he performed in school and what fights, other than with the victim, he had gotten into. The defendant responded that he got into fights in school and in jail, did not do well in school and had been suspended from school. The state, thereafter, questioned the defendant regarding those incidents. The court properly allowed that line of questioning, as the defendant had opened the door.

The defendant did not object to the state's line of questioning regarding his alleged treatment of his siblings, including whether the defendant hit them, was jealous of them, urinated in the sink while they were bathing, put only his own belongings in the bedroom he shared with his siblings, had expensive clothes despite his stepfather working two jobs and whether he had used his mother's signature to purchase the stereo. "Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . . Because of the defendant's failure to comply with the rules of practice, the claim concerning the admissibility of this particular evidence was not properly preserved for appeal." (Citation omitted; internal quotation marks omitted.) *State* v. *Ulen*, 31 Conn. App. 20, 30, 623 A.2d 70, cert. denied, 226

Conn. 905, 625 A.2d 1378 (1993). We therefore decline to review those claims.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.