STATE OF CONNECTICUT *v.* LATOYA T. ABNEY
(AC 23257)

Lavery, C. J., and Schaller and Bishop, Js.

Argued November 18, 2004—officially released April 19, 2005

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's

attorney, and *Cynthia S. Serafini*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Latoya T. Abney, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). On appeal, the defendant claims that (1) the trial court abused its discretion by excluding evidence probative of her claim of self-defense, (2) in excluding that evidence, the court deprived her of the right to establish a defense under the United States and Connecticut constitutions, (3) the court improperly instructed the jury on the issues of self-defense and reasonable doubt, and (4) the court improperly allowed the state to make racially motivated peremptory strikes that violated her federal and state constitutional rights to an impartial jury. We conclude that the court improperly excluded evidence that was corroborative of her claim of self-defense and that the exclusion of that evidence was harmful to the defendant. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.[1]

The following facts are pertinent to our discussion of the issues on appeal. In the early morning of April 9, 2000, the defendant's former boyfriend, Kirk McLeod, and an acquaintance, Thomas Jones, came to the defendant's apartment in Waterbury, ostensibly for McLeod to retrieve his personal belongings because his relationship with the defendant recently had ended. When McLeod first entered the apartment, he used the defendant's telephone. After concluding his call, McLeod approached the defendant, who was lying on her sofa, and slapped her in the face. Subsequently, while

---

[1] Because we agree with the defendant on her first claim, which is dispositive, we do not reach any of her other claims. The defendant's other claims likely will not recur at retrial.

McLeod was in the bedroom packing his clothing, the defendant went to the kitchen and picked up a steak knife. She then walked into the bedroom where a dispute erupted between her and McLeod. Although Jones did not witness that dispute because he was watching television in the living room, he heard the defendant ask McLeod to get off of her. When McLeod noticed that the defendant was holding a knife, he asked her if she was going to cut him and then struck her in the face. As the altercation progressed, McLeod moved toward the defendant, as she stabbed him in the chest, causing him to fall to the floor, bleeding. After first calling her cousin, the defendant then alerted the police and informed them that McLeod had been stabbed. After the police and an ambulance arrived, McLeod was transported to St. Mary's Hospital, where he died shortly thereafter.

The defendant was charged with murder in violation of General Statutes § 53a-54a. At trial, the defendant claimed self-defense. She testified that when she cut McLeod with the knife, she feared for her safety. To support her claim that she reasonably believed it was necessary to defend herself, she testified that on October 4, 1996, McLeod had struck and kicked her in the stomach while she was pregnant, and that he had bitten her on the shoulder, causing injuries for which she required emergency medical attention.

At trial, the defendant sought to introduce medical records regarding the October 4, 1996 hospital visit. The records show, inter alia, that the defendant, while pregnant, received treatment at the Woodhull Medical Center emergency room in Brooklyn, New York, that the defendant reported being assaulted repeatedly in the abdomen, that the hospital staff performed a sonogram to examine the fetus, that the defendant suffered a human bite on her shoulder and that she was treated as a high priority trauma patient. The state objected

to the offer on the ground that the hospital records constituted hearsay. The court excluded the evidence, not because it constituted hearsay, but on the ground that the medical records were not "the best evidence."[2] During closing argument to the jury, the prosecutor suggested that the defendant had fabricated the claim of self-defense. The prosecutor also put at issue whether the prior incident of abuse ever occurred.[3] The jury found the defendant not guilty of murder, but guilty of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (1). This appeal followed.

The defendant claims that the court improperly excluded evidence that was relevant to her theory of self-defense. Specifically, she claims that the court abused its discretion by excluding hospital records corroborating her claim that she sustained injuries from an alleged October 4, 1996 altercation with McLeod. The defendant maintains that the medical records should have been admitted at trial to show (1) her subjective perception that McLeod's physical aggression was likely to cause her grievous bodily harm and

[2] The court concluded: "The medical records that are corroborative, if you will, of a person's testimony [are] not the best evidence. The best evidence is the testimony of the witness herself. And [the defendant] did testify [as to] exactly what happened, that she was treated in the hospital, and there has been no cross-examination that has, to this court's recollection, that that testimony concerning the incident nor the treatment was contested."

[3] The prosecutor stated in relevant part during closing argument: "Again, with respect to what the defendant was thinking that night and any fear that she might have had of Mr. McLeod. When you listened to that testimony that she gave regarding the incident in New York . . . [a]nd if you listen to that testimony, even that seems physically impossible because she talks about in the course of this fight, we were facing each other and then he reached over and bit me on the shoulder and, she said, back here, as she was moving backward. He must have been quite an athlete. It makes no sense. . . . She never said she feared great bodily harm and, again, *even if that incident occurred*, the injury was a bite mark, a kick to the stomach." (Emphasis added.)

(2) her state of mind at the time of the stabbing. We agree that the court improperly excluded that evidence.

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the [admissibility] of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Crocker*, 83 Conn. App. 615, 634, 852 A.2d 762, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004). "The standard for determining whether a nonconstitutional error is harmful is whether it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 397, 796 A.2d 1191 (2002).

I

"When determining whether the trial court abused its discretion, our review is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *DeBarros*, 58 Conn. App. 673, 685, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000). We conclude that the court incorrectly applied the law when it excluded evidence relevant to the defendant's claim of self-defense.

"As defined by our Supreme Court, the best evidence rule requires a party to produce an original writing, *if it is available*, when the terms of that writing are material and must be proved. . . . The basic premise justifying the rule is the central position which the written word occupies in the law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cadle*

*Co.* v. *Errato*, 71 Conn. App. 447, 452–53, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002). In sum, the rule requires that if the contents of a writing, recording or photograph are to be proven, then the original writing, recording or photograph must be admitted into evidence. C. Tait, Connecticut Evidence (3d Ed. 2001) § 10.1, p. 776. Because the authenticity of the hospital records was not at issue, the requirements of the best evidence rule were not implicated. The objection at trial was that the records constituted hearsay, and no objection was made regarding the genuineness of the records.

"[W]e are authorized to rely upon alternative grounds supported by the record to sustain a judgment." (Internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 54, 830 A.2d 240 (2003). On appeal, the state raises two alternate grounds for affirming the trial court's ruling excluding the defendant's medical records from evidence. It argues that the medical records did not identify the victim as her assailant and that the records were cumulative of the defendant's testimony about her treatment at the hospital.

As to the first claim, the failure of the records to identify the defendant's assailant pertains to the weight and not the admissibility of the records. See *State* v. *Evans*, 44 Conn. App. 307, 314, 689 A.2d 494 (evidence susceptible of different explanations goes to weight, not admissibility of evidence), cert. denied, 240 Conn. 924, 692 A.2d 819 (1997). As to the second claim, the medical records were not cumulative because they provided independent verification that the defendant in fact was treated for an assault. See *State* v. *Smith*, 73 Conn. App. 173, 201, 807 A.2d 500 (evidence corroborating defendant's self-defense claim improperly excluded as cumulative), cert. denied, 262 Conn. 923, 812 A.2d

865 (2002). Hence, the state has advanced no reasonable basis for the exclusion of the medical records.

The proffered evidence was, however, relevant to the defendant's claim of self-defense. "Connecticut Code of Evidence § 4-1 provides in relevant part that [r]elevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. As it is used in the code, relevance represents two distinct concepts: Probative value and materiality. . . . Conceptually, relevance addresses whether the evidence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . [I]t is not necessary that the evidence, by itself, conclusively establish the fact for which it is offered or render the fact more probable than not. . . . In contrast, materiality turns upon what is at *issue* in the case, which generally will be determined by the pleadings and the applicable substantive law. . . . If evidence is relevant and material, then it may be admissible." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State v. Izzo*, 82 Conn. App. 285, 291–92, 843 A.2d 661, cert. denied, 270 Conn. 902, 853 A.2d 521 (2004).

A cursory review of the law regarding self-defense amply demonstrates the relevance of the proffered evidence. "Under our Penal Code, self-defense, as defined in [General Statutes] § 53a-19 (a) . . . is a defense, rather than an affirmative defense. . . . That is, [the defendant] merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . As these principles indicate, therefore, only the state has a burden of per-

suasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt.

"It is well settled that under § 53a-19 (a), a person may justifiably use deadly physical force in self-defense only if he reasonably believes both that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such attack. . . . [Our Supreme Court] repeatedly [has] indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable. . . .

"The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant *in fact had believed* that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . If . . . the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether that *belief was reasonable*, from the perspective of a reasonable person in the defendant's circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Clark*, 264 Conn. 723, 730–32, 826 A.2d 128 (2003).

The crux of the defendant's claim is that she acted in justifiable self-defense in stabbing McLeod. She testi-

fied that she reasonably believed that it was necessary to defend herself because, in a prior incident, McLeod violently had struck her in the stomach while she was pregnant and bit her on her shoulder.

Evidence that had a logical tendency to show that McLeod was violent toward the defendant in the past was relevant to a determination of whether the defendant acted in justifiable self-defense. The record of the defendant's October, 1996 hospital treatment provided independent corroboration of her claim that McLeod previously had been violent toward her. That history was relevant to whether the defendant did, in fact, fear for her life in the altercation with McLeod and whether her fear was well-founded. See State v. Collins, 68 Conn. App. 828, 835, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002). Such evidence also would have aided in the determination of whether the defendant in fact believed that she needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel McLeod's alleged attack.

We conclude that the court abused its discretion by excluding the medical records regarding the defendant's emergency medical care on October 4, 1996, because that evidence of a prior incident of an assault on the defendant would have been relevant to show that she reasonably feared for her safety in this instance.

II

Having concluded that the court improperly excluded the proffered evidence, we turn to the question of whether the court's decision constituted harmful error. In this instance, we are satisfied that the defendant has demonstrated a sufficient probability that the court's improper ruling likely affected the result of the trial. The exclusion of the hospital records especially was detrimental because proof that the defendant reason-

ably believed that she was in imminent danger of death or serious bodily injury was essential to her claim of self-defense. The defendant attempted to offer the evidence to support her claim that McLeod violently had abused her in the past and, therefore, that she reasonably believed that she was in imminent danger of death or serious bodily injury. Her claim that she feared she was in imminent danger substantially rested on the claim that McLeod had abused her in the past. Without the medical records being admitted into evidence, the only evidence of the prior incident of abuse was the defendant's testimony that such incident occurred. The defendant's testimony, if uncorroborated, could reasonably be viewed as merely self-serving and, therefore, the type of evidence that likely would be discounted by the jury. Additionally, the state, in its closing argument, suggested that the defendant fabricated the self-defense claim. Indeed, the state even questioned whether the alleged October 4, 1996 incident ever happened. The prosecutor stated that the defendant "never said she feared great bodily harm and, again, even *if that incident occurred*, the injury was a bite mark, a kick to the stomach." (Emphasis added.) The excluded evidence was objective corroboration of the defendant's claim that McLeod had abused her in the past and that the defendant, in fact, reasonably believed she was in danger of death or serious bodily injury. Because we are persuaded that the exclusion of that evidence, in all likelihood, affected the jury's verdict against the defendant, as that evidence went to the heart of her claim of self-defense, we reverse the judgment and remand the case for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.