## STATE OF CONNECTICUT *v.* PAUL RUSSELL
### (AC 20627)

Lavery, C. J., and Schaller and O'Connell, Js.

---

Argued December 3, 2001—officially released January 29, 2002

*William B. Westcott,* special public defender, for the appellant (defendant).

*Joseph T. Corradino,* assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Paul Russell, appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1) and (2).[1]

---

[1] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

The defendant claims that the court improperly admitted prior consistent statements made by the minor victim through the testimony of Melanie Kmetz, an employee of the state department of children and families. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the summer of 1998, the defendant engaged in sexual misconduct with the victim, who was eight and one-half years old, while baby-sitting for the victim in the defendant's home. On October 15, 1998, the victim told her mother that the defendant had kissed her on the mouth. The following morning, the victim's mother questioned the victim further, and the victim revealed that the defendant had "touched her front." After school, the victim's mother took the victim to the defendant's home, where the victim spoke privately with the defendant's wife regarding her allegations. Later that day, the victim's mother took the victim to the hospital, where Jeffrey Moorman, a physician, examined the victim and, as part of his diagnostic assessment, discussed with her the defendant's alleged misconduct. On October 22, 1998, the victim was interviewed by Kmetz.

During his cross-examination of the victim, defense counsel asked the victim if she understood what a lie was, if she ever had lied and if she had spoken to the prosecutor about the case before her direct testimony and after her initial testimony on cross-examination. The prosecutor objected to counsel's line of questioning, and the court excused the jury.

Outside the presence of the jury, defense counsel acknowledged that he intended to explore the issue of pretrial preparation and the extent to which it might have affected the victim's recollection. The prosecutor responded that he did not object to such questions, but would ask the court at some future time to admit prior

consistent statements that the victim had made to Kmetz for the purpose of rehabilitation. The prosecutor argued that this was necessary because defense counsel's questions as to the victim's preparation for her courtroom testimony constituted an attack on the victim's credibility, and he wanted to show through the prior consistent statements that her story had not changed following her discussions with the prosecutor. The defense demurred, arguing that questions relating to how a child witness was prepared, how many times the child met with the prosecutor and how many times the child talked with the prosecutor about the case do not constitute an attack on the child's credibility, and that his questions were not intended to establish the victim's bias or prejudice. Rather, the questions would show whether pretrial preparation requiring the victim to "hash and rehash" her story "a bunch of times" had affected the "clarity" of her memory about the incident. After hearing the arguments of counsel, the court stated that it was "inclined to rule in favor of the state," and the jury returned.

Defense counsel then queried the victim regarding her pretrial preparation with the prosecutor, including whether the prosecutor had asked her questions and had showed her any papers, written material or pictures to remind her "what the answers should be." Counsel also elicited testimony from the victim that the prosecutor had told her that defense counsel believed that she was lying.

Later in the trial, Kmetz took the stand to give detailed testimony regarding the victim's description of her encounters with the defendant and where in his home the encounters occurred. Defense counsel objected to the admission of this testimony, and the court excused the jury. Defense counsel argued that he had not attacked the victim's credibility and that cases where the court had permitted the admission of prior consis-

tent statements were distinguishable on their facts from the present case. The prosecutor disagreed. After a lengthy colloquy, the court ruled in favor of the state, and defense counsel requested a limiting instruction. The court then permitted the testimony of Kmetz as a prior consistent statement for rehabilitation purposes.

Thereafter, the jury returned a verdict of guilty on the two counts of risk of injury to a child, and the court sentenced the defendant to a total effective sentence of ten years, execution suspended after six years, followed by fifteen years of probation. This appeal followed.

The defendant now concedes that "it is indeed true that [defense counsel] painted preparation with the prosecutor as a discrediting influence" at trial. He claims, however, that "[t]he entire process [the victim] was subject to—and not just the small piece in preparation of trial—formed the theory of memory taint presented by the defendant." According to the defendant, this process began "long before the state prepared [the victim] for trial" and included undue influence by family members prior to the victim's interview with Kmetz. He argues that counsel's cross-examination of the victim was merely "part of a larger theme going to the entire history of [the victim's] disclosures against the defendant," and he now contends that the purported consistent statements should not have been admitted because they were "part of the taint process . . . [and] not part of the rehabilitation of such a claim."

"Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. . . . To permit a party to raise a different ground on appeal than was raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party. . . . We have consistently refused to consider evidentiary rulings not prop-

erly preserved. Where the issue raised for the first time on appeal is a matter of state evidentiary law, rather than of constitutional significance, this court will deny the defendant appellate review." (Citation omitted; internal quotation marks omitted.) *State* v. *Romero*, 59 Conn. App. 469, 477, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000).

In the present case, the prosecutor argued at trial that the purpose of admitting the prior consistent statements was to rehabilitate the victim following defense counsel's attack on the victim's credibility through questions regarding the victim's pretrial preparation with the prosecutor. Defense counsel's objection to the admission of the testimony of Kmetz was premised solely on the ground that the questions that he had asked the victim did *not* raise doubts about her credibility. Counsel never argued that the disputed testimony should not be admitted because it might have been tainted by the victim's prior discussions of the incident with family members or others. This claim is, therefore, raised for the first time on appeal. Accordingly, we decline to review this unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.