# STATE OF CONNECTICUT *v.* MICHAEL STAVRAKIS
## (AC 24110)

Schaller, DiPentima and Peters, Js.

 

Argued December 1, 2004—officially released April 5, 2005

*Nicholas P. Cardwell*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Anthony Bochicchio*, assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal, the defendant challenges his conviction of criminal trespass in the first degree in violation of General Statutes § 53a-107 and assault in the second degree in violation of General Statutes § 53a-60.[1] The principal issue is the trial court's admission into evidence of a felony narcotics conviction and a larceny incident, both of which had occurred more than ten years prior to trial in this case. The defendant also raises other claims of instructional impropriety, evidentiary impropriety, an inconsistent verdict and prosecutorial misconduct. We affirm the judgment of the trial court.

[1] The jury found the defendant not guilty of criminal mischief in the third degree in violation of General Statutes § 53a-117 and of disorderly conduct in violation of General Statutes § 53a-182.

The jury reasonably could have found the following facts. On the morning of April 7, 2002, the defendant, Michael Stavrakis, and his father became involved in an altercation with the victim, Stephen DeLuca. The altercation arose out of the father's disapproval of a relationship between the victim and Christina Stavrakis, the defendant's sister. During the course of the struggle, after the victim had pushed the defendant's father through a glass panel, the defendant struck the victim over the head with a stick. Additional facts will be set forth as necessary.

## I

## EVIDENTIARY IMPROPRIETY

The defendant raises four claims of evidentiary impropriety. The standard of review for evidentiary rulings is well established. We will make every presumption in favor of the correctness of the trial court's evidentiary ruling and will disturb this ruling only where an abuse of discretion is manifest. See *State* v. *Whitford*, 260 Conn. 610, 636, 799 A.2d 1034 (2002). "[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Collins*, 68 Conn. App. 828, 831, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002).

In his first two claims, the defendant contends that the court improperly admitted into evidence an act of larceny that he had committed in 1988 and his conviction in 1989 for possession of narcotics with intent to sell. He argues that the court should have precluded reference to both acts of misconduct because of their remoteness in time to the present incident. In his other evidentiary claims, he maintains that the court improperly precluded him from presenting evidence of prior

violence on the part of the victim and of hospital records describing the extent of the victim's physical injury. We agree with the state that none of the challenged rulings entitles the defendant to a new trial.

A

The defendant claims that the court improperly admitted into evidence an act of larceny that he had committed in 1988 and his conviction in 1989 for possession of narcotics with intent to sell. We conclude that the court properly admitted the act of larceny into evidence. Although we agree that evidence of the defendant's narcotics conviction should not have been admitted, we conclude that this evidentiary impropriety was harmless error.

"Three factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time." *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982); see also Conn. Code Evid. § 6-7. Credibility also may be challenged by "acts of misconduct other than a felony conviction if those acts bear a special significance upon the issue of veracity . . . ." (Internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 85–86, 513 A.2d 116 (1986).

In *Nardini*, our Supreme Court adopted the ten year rule embodied in rule 609 (b) of the Federal Rules of Evidence[2] as "a rough bench mark in deciding whether

---

[2] Federal Rule of Evidence 609 (b) provides in relevant part that "[e]vidence of a conviction . . . is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . ."

trial court discretion has been abused . . . ." *State* v. *Nardini*, supra, 187 Conn. 526. A prior conviction that is more than ten years old may, therefore, be admissible under some circumstances. See, e.g., id.; see also *State* v. *Cooper*, 227 Conn. 417, 436, 630 A.2d 1043 (1993) (finding no abuse of discretion in admission of twenty-six year old conviction); *State* v. *Prutting*, 40 Conn. App. 151, 162, 669 A.2d 1228 (finding no abuse of discretion in admission of two eleven year old convictions), cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996).

1

The defendant claims that the court improperly admitted into evidence his conviction for a felony that occurred thirteen years prior to the assault at issue in this case. The state concedes that this conviction, which involved the possession of narcotics, was not especially probative of the defendant's truthfulness. Relying primarily on *State* v. *Askew*, 245 Conn. 351, 716 A.2d 36 (1998), the state argues, nonetheless, that the court did not abuse its discretion when it admitted evidence of the defendant's felony conviction. We are not persuaded.

In *State* v. *Askew*, supra, 245 Conn. 364, 366–71, our Supreme Court held that it was not an abuse of discretion where the trial court admitted evidence of a criminal defendant's conviction for felony *larceny* that exceeded the ten year benchmark by a mere seven months. This case differs from *Askew* in that, here, the defendant's conviction exceeded the ten year benchmark by three years.

The state argues that such differences are outweighed by an important similarity between the cases in that, here, as in *Askew*, the outcome hinged on the relative credibility of the victim and the defendant. See id., 369–70. Our Supreme Court has observed that, in such cases, "there [is] greater, not less, compelling reason for exploring all avenues which would shed light on which

of the two witnesses [is] to be believed." (Internal quotation marks omitted.) Id., 369. In this regard, the court in *Askew* found significant the fact that the defendant had already been impeached with a felony conviction by the state before defense counsel attempted to impeach the victim with a prior felony conviction of his own. Id., 371. For the most part, the present case is similar, even though the order of impeachment is reversed.

Although *Askew* is instructive, the state overemphasizes the importance of "relative credibility" as a controlling factor in the court's analysis. In *Askew*, our Supreme Court evaluated "relative credibility" as one factor among many. Id., 370–71. In this case, however, the state would have us disregard all the other factors, such as remoteness in time and truthfulness, to which the court in *Askew* attached considerable weight. See id. This we are not inclined to do. Whatever effect on credibility the defendant's felony drug conviction might once have had must have dissipated by the start of trial in this case. Admission of this evidence cannot, therefore, be justified.

An evidentiary error does not automatically require a new trial. The defendant also must show that the improper admission of the felony conviction was so prejudicial that he was deprived of a fair trial. *State* v. *Ciccio*, 77 Conn. App. 368, 388, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251 (2003). In this case, the potential for prejudice arising out of the admission of the felony conviction was slight. Because the jury already was aware of the larceny incident for purposes of impeaching the defendant, "it is . . . highly improbable that any additional prejudice arising from knowledge by the jury of [the felony] conviction affected the outcome." *State* v. *Nardini*, supra, 187 Conn. 530. This conclusion is buttressed by the fact that the offenses for which the defendant was charged in this case differed

substantively from those offenses with which he was impeached, and by the fact that the jury found him not guilty of two of the charges brought against him. See footnote 1.

2

The defendant also argues that the court improperly admitted evidence of his involvement in a larceny incident that occurred fourteen years prior to trial. Remoteness, however, is only one of three primary factors for us to consider. We also must evaluate the extent to which the evidence provides an indication of the defendant's veracity, as well as the potential for prejudice arising from its admission.

In *State* v. *Irving*, 27 Conn. App. 279, 290, 606 A.2d 17, cert. denied, 222 Conn. 907, 608 A.2d 694 (1992), this court observed that an act of larceny is particularly probative of a defendant's truthfulness. On that ground, the evidence in this case was clearly admissible. See id.

In addition, as our Supreme Court observed in *Nardini* with respect to the possibility of prejudice, a dissimilarity between the prior conviction and the present charge "lessens the likelihood that the jury drew any inference of propensity." *State* v. *Nardini*, supra, 187 Conn. 529. Where, as here, the relative credibility of the defendant and the alleged victim is a central issue, and where, as here, both the alleged victim and the defendant have been impeached with prior convictions,[3] the prejudicial effect of such evidence is diminished. See id. As was noted previously, the fact that the jury found the defendant not guilty on two counts in this case provides some indication that the admission of the defendant's larceny conviction did not unduly

---

[3] During cross-examination, defense counsel asked the victim whether he had been convicted of a felony in Florida, and he responded in the affirmative.

influence the jury in its assessment of the evidence. See id.

We conclude, therefore, that the defendant cannot prevail on this claim. The court did not abuse its discretion when it admitted into evidence the defendant's previous involvement in an act of larceny.

## B

The defendant also claims that he is entitled to a new trial because the court abused its discretion and violated his constitutional right to present evidence by precluding him from presenting probative evidence to the jury. He maintains that he should have been able to inform the jury about previous violent misconduct on the part of the victim and about hospital records that allegedly would have shown that the victim had not suffered serious physical injury from the assault. Neither claim is persuasive.

## 1

The defendant maintains that evidence of prior instances of violent misconduct by the victim against the defendant's sister should have been admitted into evidence to explain why his sister had given one version of the incident in her written statement to the police and a different version during her testimony at trial. We must determine, therefore, whether the instances of misconduct offered by the defendant fall within one of the recognized exceptions to the rule that specific instances of misconduct generally are not admissible. See *State* v. *Whitford*, supra, 260 Conn. 636–37.

The defendant contends that the evidence excluded by the court in this case fits within the exception that we first recognized in *State* v. *Collins*, supra, 68 Conn. App. 828. In that case, we held that evidence of specific acts of violence previously committed by a victim against a defendant offered in support of the defen-

dant's self-defense claim was admissible to show the state of mind of the defendant at the time of the murder. Id., 838. We emphasized that such evidence was admissible because it "was crucial to the defendant's claim of self-defense . . . ." Id., 839.

This case is different.[4] In the present case, the defendant sought to demonstrate that his sister purposely falsified the version of events in her written statement to the police out of her fear of the victim. The evidence that the defendant sought to present in support of this theory had no bearing, however, on the defendant's self-defense claim. *Collins*, therefore, is inapposite. The defendant has not offered, nor have we found, any other evidentiary principle that might apply to this claim.[5]

The court afforded the defendant ample opportunity to elicit testimony in support of his contention that his sister feared the victim.[6] We conclude, therefore, that

---

[4] Another important distinction between this case and *Collins* is that, here, the defendant has offered evidence of prior bad acts committed against a witness, whereas the prior bad acts admitted in *Collins* were committed against the defendant. See *State* v. *Collins*, supra, 68 Conn. App. 830.

[5] The defendant also argues that the proffered evidence was admissible under § 4-5 (b) of the Connecticut Code of Evidence. This section provides in relevant part: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to . . . corroborate crucial prosecution testimony." Conn. Code Evid. § 4-5 (b). Because the defendant did not raise this claim at trial, he is precluded from raising it for the first time on appeal. See *State* v. *Sandoval*, 263 Conn. 524, 556, 821 A.2d 247 (2003). Even if this claim had been preserved properly, it still would have failed because the defendant did not offer this evidence to "corroborate crucial prosecution testimony"; Conn. Code Evid. § 4-5 (b); rather, he offered it to bolster his own case by undermining the weight potentially afforded his sister's statement to the police. In that statement, she had stated that the defendant had entered the victim's residence carrying a bat.

[6] For example, the defendant's sister testified that she was "in fear of [the victim]" and that she had been "in fear of him . . . [t]hrough [her] whole relationship . . . ." She testified that, on one occasion, the victim had "put a gun in [her] mouth." She also testified that the victim "beat her up" and that "[i]f [she] left [him] . . . he was going to kill [her]." The defendant testified that he went into the house "for the safety of my sister" and that the victim was "violent, and he has been abusing my sister."

the court did not abuse its discretion in precluding the defendant from also introducing specific acts of violence committed by the victim against the defendant's sister. Not only would such evidence of specific bad acts have been cumulative of the testimony already introduced, but the court reasonably could have determined that its potential for prejudice far outweighed its minimal probative value. As the court noted: "[A] lot of that information is collateral and it just creates confusion among the jurors. . . . And we get off on minitrials about incidents between the witness and the victim." See *State* v. *Weber*, 31 Conn. App. 58, 66, 623 A.2d 506 (observing that probative value of specific acts of violence diminishes depending on "how petty, how remote in time [and] how dissimilar in their nature to the facts"), cert. denied, 226 Conn. 908, 625 A.2d 1379 (1993); *State* v. *Miranda*, 176 Conn. 107, 112, 405 A.2d 622 (1978) (explaining that specific acts of violence introduced as evidence of victim's character have "the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial").

2

The defendant also claims that the court abused its discretion when it precluded him from introducing the victim's hospital records into evidence. In particular, the defendant now asserts that he intended to use the hospital records to show that the victim had not suffered serious physical injury from the assault. The defendant contends, therefore, that the court effectively denied him his constitutional right to present his claim of self-defense. We disagree.

Even if the court's ruling can be said to have implicated the defendant's constitutional right to present an adequate defense, that right does not compel the admission of any and all evidence offered for that purpose. *State* v. *Bova*, 240 Conn. 210, 236, 690 A.2d 1370

(1997). The defendant was afforded a constitutionally sufficient opportunity to present his claim of self-defense by way of his own testimony, by cross-examination of the state's witnesses, and by any other relevant and admissible evidence bearing on the question of the victim's injuries.[7] The court's decision to exclude the hospital records, therefore, did not deprive the defendant of his right to put on a defense.

The record reveals, moreover, that the defendant offered the hospital records as evidence of a prior inconsistent statement made by the victim rather than as evidence of the seriousness of his injuries.[8] Because it

---

[7] For example, the victim testified that he was "bleeding from the head," "real dizzy" and experiencing "severe pain" after being hit on the head. The defendant testified that, after he had hit the victim with the stick, the victim appeared dazed and was bleeding from his head. The defendant's sister testified that she drove to Boston with the victim the same day as the altercation and that the victim rode his motorcycle the next day.

[8] During the state's redirect examination of the victim, he testified that, because of the assault, he had "lost [the] ability to work." On recross-examination, defense counsel asked the victim whether he had stated his occupation as "unemployed" when he went to the hospital. The victim responded that he did not recall. Defense counsel then introduced the victim's hospital records in an attempt to refresh his recollection. After silently reading the records, the victim responded that he still did not remember. Defense counsel then offered the hospital records as an exhibit, at which point the following colloquy took place:

"The Court: Assuming what you're saying is true—it's true that it is a hospital record, it's—it has no relevance whether he said he was unemployed or not.

"[Defense Counsel]: That's what he gave as his occupation, unemployed, on April 7. And the state's attorney had just asked him—he—questions—and to the state's attorney's questions, he responded about, he's not working now. . . . I'm attempting to establish that on April 7, he was unemployed.

"The Court: I—I guess I don't follow you, counsel. So what if he was?

"[The Prosecutor]: I'm going to object, Your Honor. He—he—first of all, he just said, he doesn't recall saying that. He usually says, self-employed. That's—a nurse wrote something down that she thinks she heard. I don't think it's, you know, necessarily accurate, and it's not relevant to this determination, and I'm going to object.

"The Court: The objection is sustained.

"[Defense Counsel]: Your Honor, I would like to mark it for [identification].

"The Court: All right. Mark that page for [identification]. Hand it to the clerk."

is impossible for the court to abuse its discretion on a ruling that it was never asked to make, we conclude that it properly excluded the hospital records from evidence. See *State* v. *Shabazz*, 246 Conn. 746, 760, 719 A.2d 440 (1998) (holding that evidence is properly excluded where it concerns issue not in dispute and is cumulative of evidence already before jury), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999); *State* v. *Russell*, 67 Conn. App. 822, 826–27, 789 A.2d 1088 (explaining that review of trial court's evidentiary ruling is limited to specific legal ground raised in objection), cert. denied, 260 Conn. 901, 793 A.2d 1090 (2002).

## II

## INSTRUCTIONAL IMPROPRIETY

The defendant claims that the trial court improperly instructed the jury on three issues. He claims that the court (1) should have instructed the jury that the stick he used to hit the victim, as a matter of law, did not constitute a "dangerous instrument" for purposes of assault in the second degree because the victim did not suffer serious physical injury, (2) should have given a consciousness of guilt charge based on comments made by the victim that he did not want the police involved because he was on probation and (3) deprived him of his constitutional right to establish a defense by failing to reinstruct the jury on the elements of self-defense when it reinstructed the jury on the elements of assault in the second degree and criminal trespass in the first degree. None of these claims has merit.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under

the established rules of law." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004); see, e.g., *Rubel* v. *Wainwright*, 86 Conn. App. 728, 734–35, 862 A.2d 863, cert. denied, 273 Conn. 919, 871 A.2d 1028 (2005).

## A

The defendant first claims that the court improperly denied his request to instruct the jury that, because the victim had not suffered serious physical injury, the stick used by the defendant to hit the victim was not a "dangerous instrument" for purposes of second degree assault. The defendant concedes that, in order to prove assault in the second degree, the state need prove only that the alleged victim suffered "physical injury." See General Statutes § 53a-60 (a) (2).[9] The defendant contends, nonetheless, that evidence of lack of serious physical injury is relevant to the dangerous instrument element of second degree assault because a dangerous instrument is defined as "any instrument, article or substance . . . capable of causing . . . serious physical injury . . . ." General Statutes § 53a-3 (7).[10] We are not persuaded.

The court properly instructed the jury on the dangerous instrument element of second degree assault as follows: "A dangerous instrument is any instrument, article or substance which, under the circumstances in which it is used, or attempted or threatened to be used, is capable of causing death or serious physical injury. Within the concept of a dangerous instrument, the focus is on the deadly capability of the instrument under the

[9] General Statutes § 53a-60 (a) provides in relevant part that "[a] person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ."

[10] General Statutes § 53a-3 (7) provides in relevant part: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

conditions of the particular case. Thus, it is necessary under this definition that under the circumstances in which the instrument was used, attempted or threatened to be used, it was capable of causing death or serious physical injury. Please be aware, however, that the state does not claim and is not required to prove that the victim actually suffered serious physical injury as a result of the use of the alleged dangerous instrument."

The court's instructions closely resemble the definition of "dangerous instrument" set forth in *State* v. *Torres*, 82 Conn. App. 823, 827–28, 847 A.2d 1022, cert. denied, 270 Conn. 909, 853 A.2d 525 (2004). In that case, we held that "an ordinary object may be a dangerous instrument. Therefore, [e]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the *potential* for causing serious physical injury." (Emphasis added; internal quotation marks omitted.) Id.

Whether the stick used to strike the victim over the head actually caused serious physical injury is, therefore, irrelevant. As the trial court properly explained, it is enough that the defendant used the stick in a manner that created the *potential* for such a result.[11] See id. We conclude, therefore, that the court properly denied the defendant's request to instruct the jury that

---

[11] Indeed, a jury could find that, when a stick is used to strike someone over the head, such an instrument reasonably could cause serious physical injury. See, e.g., *State* v. *Glasper*, 81 Conn. App. 367, 372–75, 840 A.2d 48 (object used to strike victim over head considered dangerous instrument), cert. denied, 268 Conn. 913, 845 A.2d 415 (2004); *State* v. *Hurdle*, 85 Conn. App. 128, 142, 856 A.2d 493 (cane used to strike victim over head considered dangerous instrument), cert. denied, 271 Conn. 942, 861 A.2d 516 (2004); *State* v. *Ramos*, 70 Conn. App. 855, 862, 800 A.2d 631 (2002) (hammer used to strike victim over head considered dangerous instrument), rev'd on other grounds, 271 Conn. 785, 860 A.2d 249 (2004).

the victim did not suffer serious physical injury from the assault.

## B

The defendant next claims that the court should have given a consciousness of guilt charge based on comments made by the victim, immediately after the assault, that he did not want the police involved because he was on probation. We disagree.

"Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a charge on the inference of consciousness of guilt." *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989)." A consciousness of guilt charge, however, applies only to conduct of a defendant and not, as the defendant argues, to a witness.[12] See *State* v. *Milner*, 206 Conn. 512, 519, 539 A.2d 80 (1988). We conclude, therefore, that the court properly denied the defendant's request to charge the jury on consciousness of guilt regarding the victim's conduct.[13]

[12] Even if a consciousness of guilt charge could apply to a party other than the defendant, such a charge would not have been appropriate here. Following the altercation, the victim did not take "evasive action to avoid detection for a crime"; *State* v. *Oliveras*, supra, 210 Conn. 759; refuse to speak to the police or provide the police with false information. See *State* v. *Middlebrook*, 51 Conn. App. 711, 720–21, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999). In addition, he neither fled from the police; see *State* v. *Delgado*, 13 Conn. App. 139, 143, 535 A.2d 371 (1987); nor threatened a witness in this case. See *State* v. *Graham*, 13 Conn. App. 554, 565, 538 A.2d 236, cert. denied, 207 Conn. 812, 541 A.2d 1241 (1988).

[13] Although the court refused to charge the jury on consciousness of guilt regarding the victim's statements, the court essentially allowed defense counsel to make a consciousness of guilt argument to the jury. During closing argument, defense counsel argued: "Now, if you were innocent—if someone came into your house and attacked you, you'd want to tell the police. But instead, [the victim and the defendant's sister] want to cover it from the police. Why? Because, you know, [the victim] knew he was the initial aggressor in this case. [The victim] was the one that started this."

## C

The defendant argues that the trial court deprived him of his constitutional right to establish a defense because the court did not reinstruct the jury on the elements of self-defense when, at the jury's request, it reinstructed the jury on the elements of assault in the second degree and criminal trespass in the first degree. We are not persuaded.

The defendant argued at trial that, because the victim was the initial aggressor in the altercation, the defendant was merely protecting himself and his father. Indeed, the court, without objection, included a self-defense charge in its jury instructions.

While deliberating, the jury sent the court the following note: "Judge White, may we please have a copy of your instructions to the jury on the count of criminal trespass in the first degree and assault in the second degree." The court subsequently reinstructed the jury on the elements of these crimes.

The defendant argues that the court also should have reinstructed the jury on self-defense.[14] As support for this claim, the defendant relies on *State* v. *Fletcher*, 10 Conn. App. 697, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988). In that case, we held that "when the jury requests clarification or rereading of the charges and simultaneously evinces confusion as to the self-defense claim of the defendant, the trial court is obligated to reinstruct the jury on that defense." Id., 708.

*Fletcher* is, however, inapplicable. In *Fletcher*, the jury specifically asked for additional clarification on the law of self-defense. Id., 699. In contrast, the jury in this case neither requested reinstruction on the ele-

---

[14] At trial, the defendant objected to the court's decision not to reinstruct the jury on the elements of self-defense.

ments of self-defense nor expressed confusion as to that claim.

The court in the present case, therefore, had no duty to reinstruct the jury on the elements of self-defense. See *State* v. *Young*, 29 Conn. App. 754, 760–62, 618 A.2d 65 (1992); *State* v. *Reid*, 22 Conn. App. 321, 324–25, 577 A.2d 1073, cert. denied, 216 Conn. 828, 582 A.2d 207 (1990). It was not required to broaden the scope of the jury's inquiry.

### III

### INCONSISTENT VERDICT

The defendant claims that the jury's verdict finding him guilty of assault in the second degree was legally inconsistent with its verdict finding him not guilty of disorderly conduct.[15] In particular, the defendant argues that disorderly conduct is a lesser offense included within assault in the second degree in that "[i]t is not possible to intend to cause physical injury to a third person by means of a dangerous instrument without engaging in violent, tumultuous or threatening behavior and without intending to cause inconvenience, annoyance or alarm to such person." The defendant contends, therefore, that the court should have rendered a judgment of acquittal after the jury found the defendant not guilty of disorderly conduct. We disagree.

In determining whether a conviction of one offense is inconsistent with an acquittal of the other, we look to whether "the offenses charged contain different elements." *State* v. *Soto*, 59 Conn. App. 500, 504, 757 A.2d 1156, cert. denied, 254 Conn. 950, 762 A.2d 906 (2000). "If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." Id.

---

[15] The defendant does not argue that the verdict is factually inconsistent.

A person commits assault in the second degree when, "with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a . . . dangerous instrument . . . ." General Statutes § 53a-60 (a) (2). A person commits the offense of disorderly conduct when, "with intent to cause inconvenience, annoyance or alarm . . . such person . . . [e]ngages in . . . violent, tumultuous or threatening behavior . . . ." General Statutes § 53a-182 (a) (1).

Review of the elements of each of these crimes demonstrates that they are different in three respects. First, the crimes have different mens rea requirements. In order to prove assault in the second degree, the state must show that the defendant intended "to cause physical injury . . . ." General Statutes § 53a-60 (a) (2). To prove disorderly conduct, however, the state must prove that the defendant intended "to cause inconvenience, annoyance or alarm . . . ." General Statutes § 53a-182 (a). One requires the intent to bring about a physical result, i.e., injury, and the other requires the intent to bring about "a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *State* v. *Indrisano*, 228 Conn. 795, 810, 640 A.2d 986 (1994). Second, a conviction of second degree assault requires proof that the defendant caused actual physical injury. Conviction of disorderly conduct, however, requires only that the defendant engage in "violent, tumultuous or threatening behavior." Third, the assault statute requires proof that the defendant used a dangerous instrument, whereas the disorderly conduct statute requires no such element.

Under established legal principles, the elements required by statute for conviction of assault in the second degree differ, therefore, from those necessary for a conviction of disorderly conduct. Accordingly, we conclude that the defendant properly was convicted of

assault in the second degree even though the jury found him not guilty of disorderly conduct.

## IV

## PROSECUTORIAL MISCONDUCT

The defendant claims that the prosecutor engaged in prejudicial misconduct because, during closing argument, the prosecutor argued that the defendant had been "involved with stealing cars." The prosecutor made this argument on the basis of a statement in the trial transcript that showed that, during redirect examination, defense counsel had asked the defendant whether he had been involved "in stealing a car in 1988." The court stated that it did not recall whether defense counsel had made a reference to "stealing cars" during redirect examination of the defendant. Accordingly, the court gave the jury a curative instruction.[16]

The defendant contends that, because the prosecutor knew that the stealing incident had resulted only in a misdemeanor conviction involving property of nominal value,[17] the prosecutor knew or should have known that the trial transcript was incorrect. The defendant argues that it was improper for the prosecutor knowingly to undermine the credibility of the defendant in reliance on an incorrect transcript. Although the court gave the

---

[16] The court instructed the jury that "it's your recollection of the evidence that counts. But I don't recall any evidence regarding theft of cars by the defendant. I recall the defendant saying that he was involved in stealing, but that was it. Now, you're going to have to—and I told you at the time that you could take his admission that he had been involved in thefts as bearing on his credibility, and I'm going to give you an instruction on that. But you're going to have to recall the evidence and make a determination of the issues in the case."

[17] The defendant was convicted of larceny in the sixth degree, which is a class C misdemeanor. General Statutes § 53a-125b (b). General Statutes § 53a-125b (a) provides that "[a] person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

jury a curative instruction to which the defendant did not object, the defendant nevertheless claims that the prosecutor's statement during closing argument deprived him of a fair trial. We do not agree.

The defendant asserts that his failure to object to the alleged misconduct is not fatal to his claim because the claim is a constitutional one. In *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004), our Supreme Court explained that "following a determination that prosecutorial misconduct has occurred, regardless of whether it was objected to, an appellate court must apply the . . . factors [set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)]. Accordingly, we review the defendant's claim despite the fact that he failed to object to the alleged misconduct at trial.

"Our first step in analyzing the defendant's claim that the prosecutor committed misconduct during closing argument is to determine whether the challenged comments were improper. . . . [W]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Young*, 76 Conn. App. 392, 403–404, 819 A.2d 884, cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003). "We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Rogelstad*, 73 Conn. App. 17, 27, 806 A.2d 1089 (2002).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court . . . has focused on several factors. Among

them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540.

The challenged conduct in this case was neither frequent nor severe. The defendant concedes that a single statement forms the sole basis of his prosecutorial misconduct claim. See *State* v. *Young*, supra, 29 Conn. App. 766 (explaining that prosecutorial misconduct claim will not result in reversal in absence of "a pattern of misconduct pervasive throughout the trial" or "blatantly egregious" conduct).

Moreover, even if the prosecutor knew or should have known that the portion of the transcript on which he relied was inaccurate, the defendant has failed to demonstrate that this single incident, for which the court provided curative instructions, prejudiced the outcome of the trial. Concededly, the relative credibility of the defendant and the victim was a central issue in this case. After listening to the court's instructions, however, the jury found the defendant not guilty on two of the charges against him. We conclude that the conduct of the prosecution was not so egregious as to deprive the defendant of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.