******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DARRYL W. *v.* COMMISSIONER
OF CORRECTION
(AC 38410)

Prescott, Beach and Mihalakos, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming, inter alia, that his
trial counsel provided ineffective assistance by failing to file a request
to charge the jury or to object to the trial court's jury instruction on
the operability of a firearm, and failing to direct the trial court in its
response to an inquiry from the jury concerning operability. The habeas
court rendered judgment denying the petition, from which the petitioner,
on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner failed to establish
that his trial counsel was ineffective in failing to file a request to charge
the jury or to object to the trial court's jury instruction on operability,
the petitioner having failed to demonstrate that he was prejudiced by
trial counsel's performance; no evidence was presented at the habeas
trial as to what specific request to charge trial counsel should have
submitted to the court, and, in the absence of any evidence as to the
language of an instruction that should have been submitted by trial
counsel, it could not be determined whether that particular instruction
would have likely changed the outcome of the trial.

2. The habeas court properly determined that the petitioner's trial counsel
was not ineffective for failing to direct the trial court in its response to
the jury's inquiry on operability; trial counsel made clear his position
on how to address the inquiry on operability, but the trial court disagreed,
choosing to take a more cautious approach, and, therefore, the habeas
court properly determined that the trial counsel's performance did not
fall below an objective standard of reasonableness.

Argued May 23—officially released October 24, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland, where the court, *Oliver, J.*, denied the petitioner's motion for summary judgment; thereafter, the matter was tried to the court; judgment denying the petition,
from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Craig A. Sullivan*, assigned counsel, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Marc Ramia*, assistant state's attorney,
for the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Darryl W.,[1] appeals from the judgment of the habeas court denying his amended petition for writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly denied his amended petition because the record established that his criminal trial counsel had rendered ineffective assistance by (1) failing to file a request to charge the jury and/or to object to the trial court's jury instruction and (2) failing to direct the trial court in its response to the jury's inquiry on operability. We conclude that the habeas court properly determined that the petitioner failed to establish his claim of ineffective assistance of counsel in that he failed to establish that he was prejudiced by counsel's failure to file a request to charge the jury and/or to object to the jury instruction and that counsel performed deficiently by failing to direct the trial court in its response to the jury's inquiry. Accordingly, we affirm the judgment of the habeas court.

The record discloses the following facts. In the underlying criminal matter of *State* v. *Darryl W.*, the petitioner was charged with kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, attempted aggravated sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70a (a) (1), and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B). After a trial by jury, he was found guilty of all three counts. In the petitioner's direct appeal, our Supreme Court affirmed the judgment.

In its opinion, our Supreme Court set forth the factual background as follows: "The [petitioner was] married to the sister of the victim, D. Following the loss of her house due to foreclosure, D, along with her husband and two children, resided with the [petitioner], his wife and their four children for several months. D and her family then moved out of the [petitioner's] house to live with her parents and subsequently began looking for a house to buy. On the day of the incident, the [petitioner] tricked D, whom he had offered to help find a house, into meeting him alone at a commuter parking lot in Waterbury and driving with him to his house. When they arrived, the [petitioner] asked D to help carry a box into the house. Once inside, he held D at gunpoint, handcuffed her and brought her to a bedroom. There, he removed her pants, placed duct tape over her mouth, kissed her breasts, touched her vagina, briefly tied her feet to a bed, removed his pants and climbed on top of her. The [petitioner] stopped short of intercourse, saying he 'couldn't do this,' and subsequently agreed to let D leave after she brought him back to his vehicle in the commuter lot.

"The gun that the [petitioner] used was an air pistol

that the police later seized in a search of a vehicle belonging to the [petitioner]. The pistol was designed to shoot BBs propelled by compressed carbon dioxide, or $CO_2$. At the time the police seized it, the pistol contained neither BBs nor a $CO_2$ cartridge, but a later test confirmed that it was capable of firing when equipped with BBs and a cartridge.

"At trial, the [petitioner] testified that he and D had previous romantic encounters and that on the day in question they engaged in consensual intimate activity but stopped after deciding that doing so was wrong. The defendant also sought to show that the seized air pistol was not on his person at the time of the incident but had in fact been stored in his vehicle for several months. In the alternative, for purposes of the charge of kidnapping in the first degree with a firearm, he asserted an affirmative defense that, even if he had been armed with the air pistol, it was inoperable.

"Pursuant to the amended information that the state filed after the close of its case, the trial court instructed the jury that it did not need to find that the [petitioner] actually possessed an operable pistol to convict him on the kidnapping and aggravated sexual assault charges, which required only that he represented by words or conduct that he possessed such a weapon. The court further instructed the jury, pursuant to the [petitioner's] affirmative defense, that it should acquit him of the kidnapping charge if it found that he proved that the air pistol was not operable. The jury returned a verdict convicting the [petitioner] on all counts." (Footnote omitted). *State* v. *Darryl W.*, 303 Conn. 353, 357–59, 33 A.3d 239 (2012).

After his unsuccessful appeal, the petitioner brought this amended petition for writ of habeas corpus, claiming, inter alia, that his trial counsel, Mark Ouellette, was ineffective because he failed to file a request to charge the jury and/or to object to the trial court's jury instruction and because he failed to direct the court in its response to the jury's inquiry on operability.[2] By its oral decision on August 4, 2015, the habeas court denied the amended petition. On August 17, 2015, the habeas court granted the petitioner's petition for certification to appeal from its judgment. This appeal followed. Additional facts will be set forth as necessary.

We first set forth our standard of review and the relevant law governing ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"A criminal defendant is constitutionally entitled to

adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, supra, [687], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 125 Conn. App. 97, 105, 7 A.3d 395 (2010), aff'd, 306 Conn. 664, 51 A.3d 948 (2012).

I

The petitioner first claims that trial counsel rendered ineffective assistance by failing to file a request to charge the jury on the operability of the firearm and/or failing to object to the trial court's jury instruction. Specifically, the petitioner argues that trial counsel should have requested a charge that the jury should not find the petitioner guilty of kidnapping in the first degree with a firearm if it finds that the pistol was, at the time of the crime, one from which a shot could not be discharged and that the petitioner did not have the means to make the pistol capable of discharging a shot. In addition, the petitioner argues that trial counsel should have requested a charge that the jury could not find the petitioner guilty of attempted aggravated sexual assault in the first degree unless it found sufficient evidence to prove, beyond a reasonable doubt, that the pistol was, at the time of the crime, one from which a shot could be discharged, or it found that the pistol was not one from which a shot could be discharged, but that the petitioner had under his control the means to make the pistol capable of discharging a shot.[3] We are not persuaded.

The habeas court was presented with evidence of the following additional facts. At the close of evidence, but prior to the charging conference, the trial court provided a copy of its drafted jury charge to trial counsel and the prosecutor. The court asked counsel to be prepared to comment on the instructions and to discuss any concerns they may have. The following day, the court stated that it was willing to hear any requests that

either counsel wanted to make regarding the charge. In response, trial counsel for the petitioner stated: "I have no changes as it was presented this morning." The court then noted that it had included in its charge the affirmative defense that the petitioner had requested.

On the charge of kidnapping in the first degree with a firearm, the court instructed the jury in relevant part: "The third essential element is that during the abduction the [petitioner] represented by his words or conduct that he possessed a pistol. A pistol is defined by statute as 'any firearm having a barrel less than twelve inches.' A firearm is defined by statute to mean in relevant part 'a weapon, whether loaded or unloaded, from which a shot may be discharged.' Represented by words or conduct means that 'the [petitioner] did or said something to indicate to the [victim] that he possessed a pistol.' It is not necessary that the state prove that the [petitioner] actually possessed such a weapon or that the weapon was actually capable of discharging a shot.

"With respect to this charge, the [petitioner] has asserted an affirmative defense under [General Statutes § 53-16a] that any pistol displayed by him was not a weapon from which a shot could be discharged. [Section 53-16a] provides in relevant part that it shall be an affirmative defense that the pistol was not a weapon from which a shot could be discharged. In this case, such an affirmative defense, if proven, is a complete bar to a conviction for the offense of kidnapping in the first degree with a firearm. . . . If you find that the [petitioner] has proved by a preponderance of the evidence that the pistol was not a weapon from which a shot could be discharged, then you must find him not guilty on the offense of kidnapping in the first degree with a firearm under count one of the information." (Emphasis omitted.)

On the charge of aggravated sexual assault in the first degree, the trial court instructed the jury in relevant part: "The third essential element which the state must prove beyond a reasonable doubt is that the [petitioner], while attempting to commit the sexual assault, represented by words or conduct that he possessed a deadly weapon. For purposes of this case, the term deadly weapon means 'any weapon, whether loaded or unloaded, from which a shot may be discharged.' Represented by words or conduct means that 'the defendant did or said something to indicate to the [victim] that he had a deadly weapon in his possession.' It is not necessary that the state prove that the [petitioner] actually possessed such a weapon or that the weapon was actually capable of discharging a shot." (Emphasis omitted.)

At the habeas trial, trial counsel testified that, during the criminal trial, he submitted a request to charge, which included a request for the affirmative defense. He further testified that, at the subsequent charging

conference, he agreed to the charges suggested by the court. Christopher Duby, an attorney qualified as an expert in criminal defense matters in state court, testified that the proper way to preserve an instructional issue for appeal was to file a request to charge or to object to the trial court's charge. He further testified that trial counsel had acquiesced to the jury charge proposed by the court.

Following the close of evidence at the habeas trial, the court denied the amended petition for writ of habeas corpus on the ground that trial counsel did not provide ineffective assistance. The court concluded that "[t]he testimony at trial from . . . Ouellette indicated that he did indeed file his own jury charge. Assuming that this was not the case, however, the court finds no deficient performance in that the state, the judge, and trial counsel met prior to trial and agreed on the jury charge. Additionally, there's nothing in the jury charge that this court finds establishes prejudice to the [defendant's] case." We agree with the habeas court and conclude that the petitioner has failed to demonstrate that trial counsel provided ineffective assistance.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 141 Conn. App. 626, 632, 62 A.3d 554, cert. denied. 308 Conn. 947, 67 A.3d 290 (2013).

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Hickey* v. *Commissioner of Correction*, 162 Conn. App. 505, 519, 133 A.3d 489, cert. granted, 323 Conn. 914, 149 A.3d 498 (2016).

In the present case, the petitioner has failed to demonstrate that trial counsel's performance prejudiced him. No evidence was presented at the habeas trial as

to what specific request to charge counsel should have submitted to the court. Although Duby presented evidence from which the court could have determined that counsel was ineffective, specifically that counsel did not submit his own charge to the jury and did not object to the court's proposed jury charge, he did not testify as to what instruction should have been requested by counsel. In the absence of any evidence as to the language of an instruction that should have been submitted by counsel, we have no way of determining whether that particular instruction would have likely changed the outcome of trial. See *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 650–52, 153 A.3d 1264 (2017) (petitioner failed to present evidence that, had he requested charge to jury, court would have adopted suggestion or that adoption of such charge would have established reasonable probability that petitioner would not have been convicted of murder). Consequently, we conclude that there can be no finding of prejudice as to trial counsel's failure to file a request to charge the jury and/or to object to the trial court's jury instruction.

## II

The petitioner next claims that his trial counsel rendered ineffective assistance by failing to direct the court in its response to the jury's inquiry on the operability of the pistol. Specifically, the petitioner argues that it was imperative for his trial counsel to request that the court clarify the issue of operability by including in its answer that if the jury found that, at the time of the crime, the pistol was incapable of firing a shot because of a missing necessary component, the pistol should have been considered inoperable unless the jury also found that the petitioner had under his control the means by which to replace the missing component. We are not persuaded.

The habeas court was presented with evidence of the following additional facts. During deliberations, the jury sent a note that read, "Does the gun need to be theoretically operable or actually operable at the time the crime was committed?" The court, trial counsel, and the prosecutor engaged in a lengthy discussion as to how to best answer the question. The following exchange occurred between the court and counsel during this discussion:

"The Court: Does counsel want to be heard on how I should answer that question? . . .

"The Court: What's your view [Ouellette]?

"[Ouellette]: Well, I just think my—my opinion is certainly known to the Court.

"The Court: Well, but how would you—I mean it is and it isn't. I mean, how would you . . . have me answer this question?

"[Ouellette]: I think you could . . . answer that ques-

tion that it is—what did they say, theoretically—

"The Court: Operable or—

"[Ouellette]: —and actually?

"The Court: —actually operable at the time the crime was committed.

"[Ouellette]: I think you would have to answer the question in my opinion, no, to both of those.

"The Court: No to both. How so?

"[Ouellette]: Well, because it's not—at the time of the commission if it was actually operable it didn't have BBs in it and it didn't have a cartridge in it, so you couldn't actually operate it. Theoretically was it operable? Well, I guess if you believe Officer Rainone's philosophy he said [mechanically] it could . . . operate, it was mechanical but it couldn't fire a BB in the condition it was in, so—

"The Court: Well, the—and I know . . . you argued this to the jury but frankly I think you were wrong in terms of—whether there was a BB in it or not is—is irrelevant under the statute. The statute says whether loaded or unloaded. Okay. So even if there's no BB in the gun, it's still capable of firing a shot under the language of the statute.

"[Ouellette]: Okay.

"The Court: So loaded or unloaded for purposes of this is really—it doesn't matter under the statute because it says whether loaded or unloaded. So . . . this is one tough question, frankly, because I don't want to . . . mislead them in any way. And . . . the statute . . . doesn't give me any guidance on this question. . . . So I'm reluctant to say too much is the dilemma that I have. I guess the question that I would have for both counsel, should the response—

"[The Prosecutor]: Your Honor, I think almost—it seems to me . . . that they're . . . using the phrase theoretically and actually and I think . . . if it had a cartridge and a BB in it would it work or is it—that would be actually operable or theoretically operable. . . . I think the answer to both questions is yes, now that I've thought about it.

"The Court: That [it] has to be both? . . .

"[The Prosecutor]: . . . I think the answer is—the answer to both is yes. That's what the law says . . . either actually or theoretically operable.

"[Ouellette]: But the key thing I think there, Judge, is at the time they . . . put that in there specifically. Right? Which I guess—

"The Court: At the time the crime was committed, yes.

"[Ouellette]: So I guess . . . that's the time that we're talking about, would we—

"The Court: But that is the time that's . . . at issue here . . . is whether at the time that the crime was committed, whether it was capable of firing . . . a shot. . . . I'm inclined [to] be—because I'm—because of my concern with—I'm really not sure of what they mean by theoretically operable or actually operable, so I'm . . . a little concerned with directly answering the question because . . . I'm not quite sure how they're defining those two terms and my fear is if I . . . say yes to one, not to the other, or yes to both, or no to both they may have an interpretation of those terms that are unknown to be and—and problematic. . . . [T]hat's part of my problem. I mean . . . the three of us aren't even sure what . . . is meant by those . . . terms. . . .

"The Court: . . . [W]hat I'm considering doing . . . I mean one option is to simply cite for them, you know, the statute. I mean that's certainly the easy way out, whether loaded or unloaded, capable of firing a shot. And I can tell them that's . . . as much guidance as I can give them . . . .

"The Court: . . . My concern with . . . just saying actually operable is that the . . . legislature has indicated that it's not just actually operable because they've decided you don't have to have any ammunition in the gun to make it operable. . . . [W]hat's someone's normal view is of operable, which is there's a bullet in the chamber, it's ready to go. I can shoot it and . . . a bullet's going to come out or a BB's going to come out. Well, that's not what the legislature said because they said even if it's not loaded, it can be capable of firing a shot, or you look at it whether it's capable of firing a shot even if it's not loaded. And one of the issues in this case, which is a little unclear, which I think is what they have to try and figure out is I think a reasonable position for them to take here, based on the evidence and based on the testimony—now I'm not saying they're going to find this, but I think they could. And I think—this is what I believe [the prosecutor] argued to them, is you put the canister in, it's part of loading it. You put in the BB, you put in the canister and then you fire it. And that's really all part of the loading process, so not having that there doesn't make it not capable of firing a shot. And that's a reasonable interpretation under the facts here. I understand [Ouellette's] position and also reasonable and one that they could accept, which is, if you don't have that canister there, that's part of the mechanism for firing this weapon and . . . there's no evidence that it was ever there that means that it's not capable. That, to me, is a factual determination for the jury to decide . . . . I think under the . . . facts as presented here, it's factual and, so, I'm a little bit hesitant about defining theoretical or actual because I don't want to take a position one way or another on that factual question and appear to be leading them

towards a verdict, which would certainly be inappropriate here. . . . Does anybody want to be heard any further?

"[The Prosecutor]: No. . . .

"[Ouellette]: No, Your Honor. . . .

"The Court: I guess I'm inclined at this point . . . to tell them that I can't answer their question directly . . . . I think at this point, all I'm inclined to do is reread for them the definition of a firearm that it's a weapon, whether loaded or unloaded, is capable of firing a shot, ask them to continue to deliberate . . . . [I]f there [are] any additional questions they have in this area, they're free to ask them. . . . Anybody want to be heard on that?

"[The Prosecutor]: [The] [s]tate will live with that. . . .

"[Ouellette]: Your Honor, I guess, the only . . . other thing I would suggest is if the court was going to give them that instruction that that's the definition that they keep, that they use that definition in the context of it and in addition to the arguments that were made. I mean, I think you can take that as a matter of law, they still have to use the facts of the case to decide whether or not the arguments fit into the law that you're giving them to look at so . . .

"The Court: Yes, so I—what's your position at this point as to what I should do?

"[Ouellette]: . . . I think I agree with Your Honor, that you're limited in what you can give them based upon . . . the statute . . .

"[Ouellette]: The statutory language . . . that you were suggesting is what I'm talking about.

"The Court: Right. And you're in agreement with that?

"[Ouellette]: Well, no, I—

"The Court: Oh

"[Ouellette]: I'm thinking that by then getting that vanilla boilerplate definition that they're gonna just look at that . . . and not take it in the context that they maybe would have, having that definition and hearing the argument . . . .

"The Court: Yes, but all of this is in the context of obviously the evidence and . . . they know that and that's clear from my instructions. And they're just trying to apply the law to . . . the facts and . . . they're asking for additional clarification on . . . the law and they're asking . . . in a way that I'm not comfortable giving now and I think it would . . . cause more problems than it would answer. . . . I don't think I can answer this question. And, so, I am just going to simply give them the statutory definition but . . . tell them if they have additional questions and they want to present

them to me . . . after they've discussed it some more, then they're certainly free to do that. And if they put it in a different way that . . . I can answer it more directly, I'm certainly willing to do that."

The jury then returned to the court room, and the trial court provided the following instruction: "Ladies and gentlemen . . . I want to discuss the question . . . that you gave me. . . . I cannot directly answer your question and I apologize for that, but I'm just not able to do that. What I do want to do, though, is repeat for you what . . . I've told you already, what's in the charge, that I think bears upon this question, which is that the statute defines firearm, a pistol is a firearm, having a barrel less than [twelve] inches. And a firearm is defined by statute . . . as any weapon, whether loaded or unloaded . . . from which a shot may be discharged. So it's any weapon, whether loaded or unloaded, from which a shot may be discharged. So that's the best I can do in response to your question." The jury sought no further guidance on the issue of operability.

At the habeas trial, trial counsel testified that, during deliberations, the jury sent a note that asked whether the pistol had to be theoretically or actually operable at the time of the crime. He further testified that he, the prosecutor, and the court did not know what the jury meant by the phrase "theoretically operable," and that he discussed with the court how to interpret the question and address the jury. Trial counsel recalled that the court proposed that it reread to the jury the statutory definition for a firearm, to which he objected. When the court ultimately decided to reread the statutory definition of a firearm, trial counsel did not object further. Duby opined that he did not know if he "could fault [trial counsel] for [not asking for additional language or some other charge] mainly for the fact that [Duby didn't] know what that note meant. . . . [T]he safest course of action for the court at least was to do what the court did in [this] instance."

Following the close of evidence at the habeas trial, the court denied the amended petition for writ of habeas corpus on the ground that trial counsel's failure to direct the court in its response to the jury's inquiry did not render trial counsel's performance deficient. The court concluded that there was "no deficient performance, in that, upon a review of the court's actions, there was nothing improper in the court's repetition of the relevant portion of the jury charge."

To satisfy the performance prong of an ineffective assistance of counsel claim, "the petitioner must show that [trial counsel's] representation fell below an objective standard of reasonableness . . . . In other words, the petitioner must demonstrate that [trial counsel's] representation was not reasonably competent or within the range of competence displayed by lawyers with

ordinary training and skill in the criminal law. . . . In analyzing [trial counsel's] performance, we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . The petitioner bears the burden of overcoming this presumption." (Citations omitted; internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L.Ed.2d 77 (2006).

In the present case, the trial court, after reviewing the jury's inquiry, expressed its confusion about the use of the word "theoretically" and asked counsel for their opinion on the proper way to answer the question. The court suggested it merely reread the statutory definition of a firearm. Trial counsel expressed his disagreement with such a response, and engaged the court in a discussion about his concerns. In this discussion, trial counsel made clear his position that the absence of the $CO_2$ cartridge made the pistol inoperable. The court, however, determined that providing the jury with information on what makes the pistol operable could lead to the court's invading the fact-finding function of the jury. That is, whether a firearm is operable is a question of fact for the jury to decide; see *State* v. *Bradley*, 39 Conn. App. 82, 91, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996); and defining a pistol as inoperable for lack of a component infringes upon the role of the jury. Although the court has a duty to adequately address a jury's inquiry for clarification; *State* v. *Fletcher*, 10 Conn. App. 697, 701–702, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988); it is not required to broaden the scope of the jury's inquiry, nor is it required to give additional instructions. Practice Book § 42-27; *State* v. *Stavrakis*, 88 Conn. App. 371, 387–88, 869 A.2d 686, cert. denied, 273 Conn. 939, 875 A.2d 45 (2005). In rereading the definition of a firearm to the jury, the court simultaneously brought to the jury's attention the relevant portion of the charge that it thought may bring clarity to the jury and avoided potentially guiding the jury in its finding on operability. Thus, the petitioner's claim that trial counsel failed to direct the court in its response to the jury's inquiry did not amount to deficient performance because trial counsel made clear his position on how to address the inquiry on operability, and the court disagreed, choosing to take a more cautious approach.

Accordingly, we conclude that the habeas court properly determined that the petitioner's trial counsel had not performed below an objective standard of reasonableness. As such, the petitioner's claim of ineffective assistance of counsel as to the failure to direct the trial court in its response to the jury's inquiry fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The petitioner raised other claims in his amended petition, and the habeas court did not find in his favor on those allegations. Those determinations, however, are not challenged in this appeal.

[3] The petitioner has not raised a claim related to the trial court's instruction on sexual assault in the third degree.

---